THE CLEVELAND IRON MINING COMPANY v. MAREN
   HUSBY, ADMINISTRATRIX OF THE ESTATE OF
       ANDERS HUSBY, DECEASED.

*Equity—New trial at law—Perjury.*

1. The weight of authority is decidedly against the granting of a
new trial in a court of equity to impeach the testimony of wit-
nesses, or because a party has committed perjury, or even
suborned a witness to commit perjury. *Gray v. Barton*, 62 Mich.
186.

2. It is best, as a matter of public policy, that a judgment obtained
in a court of law should stand, unless it is manifestly against
conscience. In that case, or in a case where a perjury of a
witness has been fully established by judicial determination, or
by written documents, equity may very appropriately deny relief.

Appeal from Marquette. (Grant, J.) Argued May 2,
1888. Decided October 26, 1888.

Bill for a new trial at law. Complainant appeals.
Decree dismissing bill affirmed. The facts are stated in
the opinion.

*Hayden & Young*, for complainant, contended:

1. A new trial will be granted in equity for fraud or perjury
of witnesses, whereby an unjust judgment without com-
plainant's fault has been rendered against him, and after he
has been barred at law; citing *Hoskins v. Hattenback*, 14 Iowa,
314; *Fletcher v. Warren*, 18 Vt. 45; *Ballance v. Loomiss*, 22 Ill.
82; *Seward v. Cease*, 50 Id. 228; *Jennison v. Haine*, 29 Mich.
219; *Cox v. Railway Co.*, 44 Ala. 611; *Rolling Mill Co. v. State*,
54 Ga. 644, 645; *Nudd v. Ins. Co.*, 25 Minn. 100; *Wingate v.
Ferris*, 50 Cal. 105; *Stowell v. Eldred*, 26 Wis. 507, 508; *Cod-
drington v. Webb*, 2 Vern. 240.

*E. E. Osborn*, for defendant, contended:

1. The verdict of $5,000 is not an excessive recovery for a widow
with two children to support, and in hopelessly destitute cir-

cumstances; citing *Staal v. Railroad Co.*, 57 Mich. 239; *Railroad v. Armstrong*, 52 ʻPenn. St. 282.

2. As to when courts of equity will enjoin orʻannul judgments or decrees, counsel cited *Hendrickson v. Hinckley*, 17 How. 443; *Crim v. Handley*, 94 U. S. 652; *U. S. v. Throckmorton*, 98 Id. 61.

3. The court will not set aside a judgment because it was founded on a fraudulent instrument or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed; citing *U. S. v. Throckmorton*, 98 U. S. 61; Story, Eq. Jur. § 887; *Humphreys v. Leggett*, 9 How. 297; *Ins. Co. v. Hodgson*, 7 Cranch, 333; *Creath v. Sims*, How. 192; *Metcalf v. Williams*, 104 U. S. 93.

4. Before equity will grant relief, three things must concur: Ignorance of the defense when the judgment was rendered, diligence on the part of complainant, and the fact that adequate relief cannot be had at law; citing *Taylor v. Sutton*, 15 Ga. 103.

5. Equity will not relieve against a judgment at law except for fraud, accident, surprise, or manifest injustice, unmixed with fault or negligence on the complainant's part; citing *Pearce v. Chastain*, 3 Kelly (Ga.), 226; *Phelps v. Peabody*, 7 Cal. 50; *Rice v. Bank*, 26 Tenn. 39.

6. A party seeking to enjoin a judgment must show that plaintiff had no cause of action; citing *Huebschman v. Baker*, 7 Wis. 542; or that it is clearly contrary to equity and good conscience; citing *Moore v. Gamble*, 1 Stockt. Ch. 245; or that he had a good defense, of which he had no knowledge until after judgment, or that he was prevented from using it by fraud or accident or the acts of the adverse party, unmixed with negligence or fault on his part; citing *Robbins v. Mount*, 3 Kelly (Ga.), 74; *Brandon v. Green*, 26 Tenn. 130; *Meek v. Howard*, 10 Smedes & M. 502; *Powell v. Wattson*, 6 Ired. Eq. 94; *Glover v. Kedges*, 1 N. J. Eq. 113; *Morris v. Hadley*, 9 Mich. 278; *Miller v. Morse*, 23 Id. 365; *Gray v. Barton*, 62 Id. 186.

*F. O. Clark*, for defendant, contended:

1. The decision of the circuit judge on the motion for a new trial is *res judicata;* citing *Gray v. Barton*, 62 Mich. 186; *Miller v. Morse*, 23 Id. 365; *Danaher v. Prentiss*, 22 Wis. 311; *Collins v. Butler*, 14 Cal. 223; *Crim v. Handley*, 94 U. S. 652; *Simpson v. Hart*, 1 Johns. Ch. 91; *Kurtz v. Carr*, 105 Ind. 574 (5 N. E. Rep. 692).

MORSE, J.    This is a bill in equity, filed in the cir-

cuit court for the county of Marquette, in chancery, for a new trial of a suit at law, in which the complainant was cast in damages.    The corporation moved for a new trial in the circuit, which was refused, and then brought the case at law to this Court by writ of error, where it is still pending.

The bill is founded principally upon the allegation that the most important witness for the plaintiff in the suit at law committed perjury upon the trial, which was also a surprise to the defendant in such suit, who is complainant here.

We said in *Gray v. Barton*, 62 Mich. 197 (28 N. W. Rep. 817), that the—

"Weight of authority is decidedly against the granting of a new trial in a court of equity to impeach the testimony of witnesses, or because a party has committed perjury, or even suborned a witness to commit perjury."

See, also, *Miller v. Morse*, 23 Mich. 365.    It is best, as a matter of public policy, that a judgment obtained in a court of law should stand, unless it is manifestly against conscience.    In that case, or in a case where a perjury of a witness has been fully established by judicial determination, or by written documents, equity may very appropriately grant relief.

To permit, however, after a trial has been concluded at law, and the trial court has refused upon motion and hearing to grant a new trial, the losing party to hunt up a witness of the prevailing party, and procure from him an affidavit that he has sworn falsely upon the trial, and by this means carry the controversy, as to a new trial, into a court of equity, would open the door to manifold abuses, and to an uncertainty in the administration of law, not to be desired in the interest of justice, and which would necessarily give to the stronger party financially an undue advantage in litigation.    There would be but few

suits at law which in this way, after judgment, could not be opened up again in chancery. The present case is a fair example of the abuses to which such a course might expose every litigant in a suit at law.

A statement of the case here becomes necessary; and a bare recital of the facts will, we think, show the desirability of adhering pretty strictly to the rule as laid down in *Gray v. Barton, supra.*

On March 22, 1886, Anders Husby, a native of Sweden, was killed in the iron mine of the complainant. The defendant here, as administratix of his estate, brought suit in the circuit court for the county of Marquette, in which the mine was situate, against the complainant, to recover damages for negligent killing. She obtained judgment in that court on December 14, 1886, for $5,000 damages. On February 25, 1887, a motion was made before the circuit judge for a new trial upon several grounds, among which was the following:

"8. Because injustice was done defendant on said trial in the production of evidence thereon which was misleading and untrue."

April 27, 1887, this motion was denied. April 30, 1887, a bill of exceptions was settled in the circuit court.

At the trial in the circuit court, one of the principal witnesses for the administratrix was Ludwig Straud, also a Swede, and not very conversant with the English language.

The negligence of the complainant, complained of in the suit at law, was substantially as follows: In the pit in which the deceased, Husby, was working under a "shift-boss," there was a large mass of rock, immediately over the place where deceased was working, which was loose, and likely to fall; that the attention of the complainant was directed to it, through its shift-boss, whose attention was called to it; but, disregarding the danger

to which said deceased would be subjected by going to work under the said rock, the said Cleveland Iron Mining Company, by its said shift-boss, and without warning to him of the danger, ordered the deceased to go to work under said rock, which shortly afterwards fell from the roof, and killed him.

Upon the trial Ludwig Strand testified, in substance, that he was working in this pit with the deceased and others; that one of the workmen, Gustave Ladie, went up on a ladder, and examined the roof. The shift-boss thought it was all right, but Ladie told him it was not; but Williams, the shift-boss, told them to go to work. Strand also testified that he was looking at the roof, and saw a large crack therein that he could put his finger in. He claimed he went up the ladder, and saw this crack, and several others, · in the roof, and that he could see the cracks from the bottom of the pit.

Upon the motion for a new trial, the affidavit of Strand was presented to the court in favor of the motion under the eighth ground or reason assigned for a new trial. This affidavit was made February 17, 1887, before one T. W. Durham, a notary public. In this affidavit Strand affirmed that he did not go up the ladder until after the accident; that he never intended to say that he went up before in his testimony, or that he could see the cracks in the roof from the bottom of the pit by looking up; that he does not well understand the English language, was examined without an interpreter, and did not fully understand what he testified to.

" He further says that he could not in truth and fact stand on the bottom of the room in which the accident happened, about which he testified, and see a crack of the size of the one in question; that he is satisfied that it would be impossible so to do, because the room is always filled with smoke, besides being dark; that he does not

remember whether, after the ore fell, he looked up to see if he could see whether the crack remained there, but if he had looked he could not have seen from the bottom; that he does not know, of his own knowledge, whether the crack which he saw before the fall was or was not there after the fall. He did not look to see, so far as he can remember."

The affidavit of one John Brandin was also presented. He deposed that, before Strand's affidavit was drawn up, the testimony of Strand, as printed by the stenographer from his notes taken on the trial, was shown to him, and Strand read the same, and stated to Brandin that such testimony was wrong and untrue, and thereupon the affidavit was drawn; that Strand understood the affidavit, and the difference between that and his testimony taken on the trial. Strand said he was scared upon the trial, understood English imperfectly, and had no interpreter. Strand read the affidavit, and Brandin talked with him, and explained it to him. Brandin is also a native of Sweden.

Ladie also made an affidavit, which was used on the motion. In this affidavit Ladie states that he went up the ladder, and saw one crack, and only one, in the roof. He came down and told the shift-boss:

"It's bad ground up there; it will come down very soon." He said: "It's all right; John Beerling has been barring it."

Ladie, or Leijdi (as it is often spelled in the record), states in this affidavit that the "young Swede" (meaning Strand) stood there, and heard his remark to the shift-boss, but that the "young Swede" did not go up the ladder after he (Ladie) came down. Ladie was not sworn upon the trial in the law case, but was examined as a witness for the defendant in this suit, and testified that he went up the ladder and came down by the order

of the shift-boss. Told him it was bad ground, and it would "come down pretty quick." The shift-boss said to him:

"All right, you look; he is all right; all right, fill the car."

Other affidavits were presented which it is not necessary here to notice.

April 27, 1887, Judge Grant denied the motion for a new trial.

On May 19, 1887, George W. Hayden, one of the attorneys of the Cleveland Iron Mining Company in these suits, made a criminal complaint against Ludwig Strand, and a warrant for perjury was issued against him. The warrant was given to Jacob Dolf, a deputy-sheriff of Marquette, who came to Ishpeming. He testifies that he was ordered to arrest Strand, and get admissions out of him; that he was a sort of detective; that he did not caution him as to admissions. Instead of taking Strand before the magistrate, as his warrant commanded, he first drove to the office of the mining company, and met the manager, Bacon, who told him to keep Strand in custody until Monday. The arrest was made on Saturday. Dolf then took Strand to the office of the complainant's attorneys, where Strand claims they insisted upon his taking back his testimony as to going up the ladder. Dolf then took him to Marquette, under Hayden's directions, and had him go before Judge Grant, with whom he had a conversation about his testimony. He was then sent back to Ishpeming, and directed to appear before the justice on Monday, which he did.

The prosecuting attorney of the county was one of the attorneys for the Cleveland Iron Mining Company.

On Monday, without counsel, Strand was arraigned before the justice. No witnesses were examined against him, but he was examined, and his evidence taken down

by the justice; the questions being propounded to him by the attorneys of the mining company. He was not asked if he wished counsel, or to give bonds without examination. After his own deposition, Strand was bound over to court, and gave bond in $200, which bond was signed by himself and one John Peterson.

When the circuit court met, his case. was, on the motion of the court, discontinued, because the circuit judge was—

"Satisfied, from an examination of the testimony taken in the civil suit, and from an examination and his knowledge of the proceedings in this case, it would be idle to expect a conviction in the case."

In the present suit, Strand was again examined as a. witness, and gave, in substance, the same testimony as he did in the case at law, claiming that he was scared, and did not understand what he said, or what was written in his affidavit used on the motion for a new trial, or in his deposition before the justice. There seems to be good reason for this claim. Strand is an ignorant man, and speaks and understands English very imperfectly. At the time he gave his testimony in the suit at law, he was in the employ of the mining company, and remained in its employ through all these proceedings, until a few days before the trial of the present suit, when he was discharged. He did not make the affidavit, used on the motion for a new trial, of his own free will and accord, nor had he stated to any one before the day such affidavit was made that he had not told the truth on the first trial.

It is admitted and stated by the counsel for the mining company, in their brief filed in this case, that—

"The company's counsel were directed by the superintendent to prosecute Strand for perjury, if it had been found that he swore falsely. With all the circumstances

to influence belief at this time that Strand had sworn falsely, it was not known to be so. Strand was suspected, but was not proven guilty, and could only be so treated. In spite of all efforts, the whereabouts of Mickelson were not discovered until May 17 or 18 following the trial.

"In the mean time, on February 17, 1887, Strand was sent for to come to the office of the company's counsel, in company with one John Brandin, a Swede and neighbor, to talk for him. In despair of finding Mickelson, it was evidently thought one way only remained to get the truth from him, viz., by extorting it from him if possible. On hearing read the minutes of his testimony given on the trial, · Strand said that if he had ever testified that he could see where the ore came from which fell on Husby he had made a mistake, for it was too dark there to see. He excused his testimony by saying he couldn't understand English very well, and was sorry he had made so much trouble. Thereupon his affidavit was · obtained to this effect. 'A half. loaf was better than no bread' to the company."

And Brandin was not alone with Strand when he talked with him. At least one of the company's counsel was present, and the affidavit was drawn by such counsel, and sworn to before a clerk in the office. Ordinarily, an affidavit procured under such circumstance would weigh but little in a court of justice, nor could perjury be well predicated upon it. It cannot be said that this poor, ignorant laborer, knowing but little of our language, has been fairly treated by the complainant and its counsel in this case. He has been more sinned against than sinning.

It is worthy of note, also, that the same circuit judge who has heard the testimony of Strand upon two trials, heard also his affidavit upon the motion for a new trial, and privately examined him besides as to the facts, has dismissed the complainant's bill in this case.

If this manner of proceeding shall be made a precedent, by granting complainant a new trial, it will open the door to frauds and abuses unworthy the proper administration of the law. The losing party need only find an

ignorant witness, and by persuasion, fear, or threats procure different statements, to open anew every contest at law; and thus the settlement of litigation may be indefinitely postponed. I can see no equity in permitting this proceeding to end, as was desired when commenced, in a new trial at law of this case. Nor does it appear that a new trial would alter the result.

Granted that by these proceedings the worth of Strand's testimony has been destroyed, there yet remains the evidence of Ladie, and of at least one other witness, that the shift-boss was notified of the danger in the roof, and yet ordered the men to work under it.

It is claimed that there is a witness, Mickelson, who could not be procured at the time of the trial in the law court, who will testify, in substance, that there was only one crack in the roof, and that could not be "barred down," and was supposed, therefore, to be safe, and that Strand did not go up the ladder. It is claimed by complainant's counsel that Mickelson was not sworn upon the trial at law because, after due diligence, he could not be found. His affidavit was procured on May 19, 1887, and is a part of the record in this case. In this affidavit he deposes substantially as claimed by the counsel; but he admits that Ladie went up the ladder after Beerling had tried to bar down this crack; that Ladie said to one of the workmen, when he came down, "It's too bad; we can't stay under here;" that the "boss" said to Ladie, while he was up there, "Come down, Gus, and fill up the car," and Gus said, "No, its too bad here;" and the boss replied, "Well, you have to come down and fill up the car." Mickelson did not testify in this suit, and it does not seem that any great effort was made to produce him. There is no assurance that he can be procured to testify on another trial; and, if he should testify in the same line as his affidavit, we do not think it would benefit the complain-

ant any more that it would defendant. Although his evidence would contradict that of Strand, as to the latter's going up the ladder, it would also show that the shift-boss was notified by Ladie of the danger of this rock falling, and yet ordered the work under it to go on.

The bill in equity was rightfully dismissed, and the decree of the court below will be affirmed, with costs.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred. CAMPBELL, J., did not sit.