DETROIT TRUST COMPANY *v.* FURBECK.

1. EQUITY—DOING EQUITY.
   Party in equity suit who is seeking affirmative relief therein must do equity.

2. BANKS AND BANKING—STOCK AND STOCKHOLDERS—TRUSTS—LIQUIDATING DIVIDENDS.
   In suit for declaratory decree to determine whether or not trust company which had functioned as cotrustee under a testamentary trust was entitled to liquidating dividend of bank, claimed by beneficiaries and distributees of trust, where trust company had paid a major portion of assessment on the estate's bank stock from trust company's own funds, after having made distribution of the trust assets subsequent to time bank was closed, pursuant to receiver's suit against it individually as well as in its representative capacity, based on the *devastavit,* evidence *held,* to show that trust company was a stockholder in its representative capacity and, as such, entitled to share in liquidating dividend.

3. SAME—PAYMENT OF ASSESSMENT ON STOCK—TRUSTS—VOLUNTEER.
   Trust company which, as cotrustee under testamentary trust, had been sued as stockholder of bank and been required to make payment from its own assets of major portion of assessment

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 19 Am. Jur., Equity, § 463.
[2-5, 9-13] 7 Am. Jur , Banks, § 155.
[5-7, 9] 30 Am. Jur., Judgments, § 178 *et seq.*
[7] Pleading waiver, estoppel, and *res judicata.*    120 A.L.R. 8, 149.
[8] 31 Am. Jur., Judgments, §§ 635, 639, 654, 691, 692.
[8] Criterion of extrinsic fraud as distinguished from intrinsic fraud, as regards relief from judgment on ground of fraud. 88 A.L.R. 1201, 1202.
[8] Concealment of or failure to disclose existence of person interested in estate as extrinsic fraud which will support attack on judgment in probate proceedings.   113 A.L.R. 1235.
[14] 14 Am. Jur., Costs, §§ 91, 93.

against bank stock owned by the trust estate, was not a mere volunteer in so doing in view of then pending suit against it based on the trust company's *devastavit* in making distribution of trust estate subsequent to closing of doors of bank.

4. TRUSTS—PAYMENT BY TRUSTEE OF BANK STOCK ASSESSMENT FROM OWN FUNDS—REIMBURSEMENT.

Trust company, although guilty of a *devastavit* as between itself and bank receiver, where trust company made such distribution of trust estate assets as to leave trust estate which owned the bank stock, practically insolvent, was not as between itself and those beneficially interested in the trust estate and to whom such distribution had been made, guilty of such inequitable conduct as to preclude reimbursement in whole or in part from liquidating dividends, of payments of trust company's own funds in satisfaction of assessment levied against bank stock.

5. JUDGMENT—RES JUDICATA—TRUSTS—BANK STOCK ASSESSMENT— LIQUIDATING DIVIDEND.

Trust company's claim to liquidating dividend as reimbursement for payment made from own funds to satisfy bank stock assessment levied upon trust estate's bank stock held by trust company as trustee, was not barred by adjudication made in bank receiver's suit against trust company and the beneficiaries of the trust estate to recover assessment made on bank stock nor adjudication made in suit then brought by trust company against distributees to whom it had distributed assets of trust estate which had owned the stock subjected to the assessment so as to leave the estate practically insolvent, since neither suit involved the same subject matter involved in present suit for declaratory decree as to right to liquidating dividend.

6. SAME—RES JUDICATA—IDENTITY OF SUBJECT MATTER.

The first essential of the rule *res judicata* is the identity of the matter upon which the plaintiff proceeds by his action and which the defendant controverts by his pleadings.

7. SAME—RES JUDICATA—COLLATERAL ISSUES—DECISION.

When a suit is sought to be maintained or defeated by showing former adjudication of questions upon which it depends, it must appear such questions were litigated as a matter of fact, were submitted for decision and decided and were not collateral issues but crucial questions in the other controversy.

8. EQUITY—SETTING ASIDE JUDGMENT AT LAW—DEFENSES AVAILABLE.

 A court of equity will not assume jurisdiction to set aside a judgment of a court of law of competent jurisdiction on the ground that it is contrary to equity unless the defendant in the judgment was ignorant of the fact in question pending the suit, or it could not be received as a defense at law, or unless, without any neglect or default on his part, he was prevented by fraud or accident or the act of the opposite party from availing himself of the defense.

9. JUDGMENT—RES JUDICATA—TRUSTS—BANK STOCK ASSESSMENT—COLLECTION FROM BENEFICIARIES—LIQUIDATING DIVIDEND.

 Where incident to settlement of trust company's action against beneficiaries and distributees of trust estate to recover assets which trust company had distributed after closing of bank whose stock had been held by the trust estate, the beneficiaries submitted affidavits as to dissipation of assets, they were precluded from setting up judgment entered in such suit as a result of such affidavits as a bar to trust company's claim to liquidating dividends later forthcoming for reimbursement for own funds paid in satisfaction of the assessment on the stock owned by the estate at time trust company was a cotrustee.

10. BANKS AND BANKING — NATIONAL BANKS — LIQUIDATING DIVIDEND—DECLARATION OF RIGHTS—STATUTES—EQUITY—ASSESSMENT ON STOCK.

 Federal statute requiring repayment of amounts paid in by any shareholder by reason of assessments made upon the stock *held*, not controlling in suit for declaratory decree as to right to liquidating dividends, brought by trust company which, from its own funds, had paid the major portion of assessment on national bank stock after assets of trust estate owning the stock had been so distributed as to leave the estate practically insolvent, the issue being determinable upon the relative equities between the trust company and the distributees (12 USCA, § 197).

11. EQUITY—UNJUST ENRICHMENT—PAYMENT OF BANK STOCK ASSESSMENT.

 Where the primary obligation of a trust estate as to payment of assessment on bank stock owned by the estate was satisfied in large part from own funds by the trustee who had made such distribution of trust estate assets as to leave the estate practically insolvent, permitting the distributees to recover the liquidating dividends before trust company had been reim-

bursed in full would be inequitable in that distributees would be unjustly enriched at the expense of the trust company.

12. SAME—REIMBURSEMENT—PAYMENT OF BANK STOCK ASSESSMENT—LIQUIDATING DIVIDEND—INTEREST.

Trust company which had been required to make payment from own funds of assessment on bank stock owned by trust estate of which it was trustee and that had been so distributed following closing of bank that estate was left practically insolvent *held,* entitled to reimbursement from liquidating dividends of bank to full extent of payment made with legal interest from date of payment of assessment to date or dates of repayment.

13. BANKS AND BANKING—ASSESSMENT OF STOCK—REIMBURSEMENT OF TRUSTEE—REPAYMENT TO ESTATE.

After reimbursement of trustee under testamentary trust which had been required as a result of its *devastavit* to pay major portion of assessment on bank stock owned by trust estate, further liquidating dividends are payable to administrator of estate of deceased stockholder for distribution among beneficiaries under his will as an accounting then to be held shall show to be equitable.

14. COSTS—BRIEFS.

Where appellant is successful on appeal in getting decree reversed but unsuccessful as to issue urged by it against cross-appellant, costs of both courts are awarded against appellees, except that it is entitled to only one-half the taxable costs for its brief which is unnecessarily long and largely devoted to issue unsuccessfully urged.

15. BANKS AND BANKING—NATIONAL BANKS—DISTRIBUTION OF REMAINING ASSETS OF RECEIVERSHIP—CORPORATIONS—PLAN OF DISTRIBUTION.

While provisions of Federal statute relative to repayment of assessments made upon stockholders of national banks pertain to distribution of remaining assets while in the hands of receivers of such banks and other liquidating agents, where residue of assets were purchased by and transferred to a corporation for distribution according to plan embodied in the corporate articles, such plan became controlling and distribution should proceed in accordance therewith (12 USCA, § 197).

Appeal from Wayne; Neuenfelt (Lila M.), J. Submitted January 11, 1949. (Docket No. 78, Cal-

endar No. 43,891.)    Decided April 11, 1949.    Rehearing denied May 18, 1949.

Bill by Detroit Trust Company against Frances Croul Furbeck and others for declaratory decree fixing rights of various parties to funds in hands of defendant First Liquidating Corporation.    Decree for defendants.    Plaintiff appeals.    Defendant First Liquidating Corporation cross-appeals.    Reversed.

*Harry E. Warning (Cyril Chesnut Means, Jr.,* of counsel), for plaintiff.

*Harry Robbins (Sol J. Schwartz,* of counsel), for defendants.

*Bodman, Longley, Bogle, Armstrong & Dahling,* for defendant First Liquidating Corporation.

NORTH, J.    This is a suit wherein a declaratory decree is sought determining which of the claimants herein is entitled to repayment of money paid in satisfaction of an assessment against stockholders in the First National Bank-Detroit, a national banking association, which became insolvent.    The trial court decreed that all of such repayments incident to stockholders' assessments paid by or for the Croul estate should be made to the Croul estate.    Plaintiff has appealed.

Liquidation of the bank's assets together with paid stockholders' assessments resulted in all claims of creditors, including depositors, being fully satisfied and a surplus of funds from liquidation with which stockholders who had paid stock assessments are to be reimbursed at least in part.    The defendant First Liquidating Corporation is merely a stakeholder of the moneys to be repaid, and therefore will not be included in our reference to defendants here-

in, unless otherwise indicated. At the outset we note that Julia J. Croul died April 18, 1940, which was prior to filing the bill of complaint herein, and that defendant Harry Robbins is the special administrator of her estate and also the administrator *de bonis non* with the will annexed of the estate of Frank H. Croul, deceased.

Frank H. Croul died testate in 1931 and his will was probated. In accordance with the terms of the will his widow, Julia J. Croul, and the Detroit Trust Company, in due course became possessed as trustees of the assets of a testamentary trust under the residuary clause of the will. Under this trust Julia J. Croul, widow of deceased, was to have the income of the trust estate during her lifetime, and at her death the corpus of the trust was to go to Frances Croul Furbeck, a daughter of deceased. Among the assets of this trust there was included 5,250 shares in the Detroit Bankers Company, which were listed in the trust inventory as of the value of $304,500. The total assets of this trust were inventoried as having a value in excess of $550,000. The total assets of the Frank H. Croul estate were inventoried at $766,022.48.

The Detroit Bankers Company was a holding company, and as such was the record owner of practically all of the stock in the First National Bank-Detroit. Subsequent to the date when the above-mentioned testamentary trustees became possessed of the stock in the Detroit Bankers Company and on February 11, 1933, the First National Bank-Detroit closed its doors and ceased doing business. On May 11th following, the comptroller of the currency found this bank insolvent, a receiver was appointed and on May 16, 1933, an assessment was levied against the holders of its stock. As above noted, practically all of such stock was held of record by the Detroit Bankers Company, in which company

5,250 shares were held by the cotrustees under the Croul residuary testamentary trust.

In consequence of general adverse financial conditions and the closing of the First National Bank-Detroit, the Detroit Bankers Company became financially embarrassed and petitioned for dissolution of the corporation. A receiver was appointed. As the result of litigation in the Federal courts in which the receiver of the First National Bank-Detroit, the Detroit Trust Company and Julia J. Croul, the two latter in their representative capacity under the Croul will, were parties, and upon whom the resulting adjudication was binding, it was decreed that "Julia J. Croul and Detroit Trust Company, executors U/W Frank H. Croul, deceased" were liable for a stockholder's assessment of $73,792.80 plus accrued interest, making a total decreed liability of $76,340.19.

Subsequent to the closing of the First National Bank-Detroit, the Detroit Trust Company caused to be distributed practically all of the assets of the Croul testamentary trust except the shares of stock in the Detroit Bankers Company. Thereafter and on February 20, 1934, the Detroit Trust Company as a cotrustee submitted its first and final account, assigned the residue of the trust assets to Julia J. Croul as trustee, and was discharged March 9, 1934, as trustee by the Wayne county probate court. The assignment included 5,250 shares of Detroit Bankers Company stock to "Julia J. Croul, trustee under will of Frank H. Croul, deceased;" and the stock certificates are still in the possession of defendants. It was subsequent to the above discharge of the Detroit Trust Company that the Federal district court, as above noted, adjudicated the cotrustees (but designating them as coexecutors) liable for the stock assessment made incident to the closing of the First National Bank-Detroit. The decree of the district

court was affirmed by the court of appeals of the sixth district. *Barbour* v. *Thomas,* 86 Fed. (2d) 510, and certiorari was denied—300 U. S. 670 (57 Sup. Ct. 513, 514, 81 L. Ed. 877). To enforce such payment the receiver (Mr. Schram) in August, 1938, brought suit in Federal court against the Detroit Trust Company, Julia J. Croul, Frances Croul Furbeck and others. This suit as against the Detroit Trust Company and Julia J. Croul was both in their official capacities under the Croul will and against them personally. The theory on which recovery was sought included that of *devastavit,* it being alleged in the bill in substance that the Detroit Trust Company had the exclusive actual management of the assets of the Croul residuary trust, and that it wrongfully distributed or disposed of most of the trust assets, evidently by turning them over to either Julia J. Croul or Frances Croul Furbeck, or both. Service of process in this Schram case was not obtained upon either Julia J. Croul or Frances Croul Furbeck. As a result of negotiations between the litigants this suit on April 25, 1939, was settled by the Detroit Trust Company paying Schram, as receiver, $68,069.11, and an assignment to the Detroit Trust Company by the receiver of "the judgment and decree" theretofore obtained by the bank receiver against the Detroit Trust Company and Julia J. Croul for the Croul stockholder's assessment liability.

In June, 1939, the Detroit Trust Company (through its liquidating agents) brought a suit in chancery in Wayne county against Julia J. Croul and others for an accounting, discovery of secreted assets of the Croul estate, and other relief. In this suit in October, 1939, a consent compromise decree was entered which provided for transfer to the Detroit Trust Company of various assets which originally belonged to the Croul estate or to the individu-

als interested therein. The decree also provided that, other than their contribution just noted, there was to be no further personal liability for payment of the stockholder's assessment on the part of Frank C. McPherson, John A. McPherson, Jr., or his wife, or the Town and Country Shop, Inc., which parties were also made defendants in the Wayne county chancery suit. The final paragraph of the decree provided:

"It is further ordered, adjudged and decreed that when the said defendants herein have conformed with and performed all of the provisions and requirements of this decree (as to turning over assets as above stated, et cetera), then they shall be forever discharged from any further liability or responsibility, either as trustees or individually, from all claims of any nature whatsoever arising out of the matters set forth in the first paragraph of this decree (*i.e.*, the Detroit Trust Company's payment of $68,069.11 in settlement of the Croul stockholder's assessment)."

Full performance by defendants of the "provisions and requirements" of the decree is admitted. The assets turned over in settlement of the suit in Wayne county in chancery were of the value of $18,650.28, at least we herein accept that as the value of such assets since there is no satisfactory showing to the contrary in this record. The receiver of the First National Bank-Detroit applied on the Croul stockholder's assessment impounded Croul bank deposits totalling $5,723.71. It was by deducting this amount from the Federal court's judgment of $73,792.82 (the accumulated interest having been cancelled by compromise) that the amount which the Detroit Trust Company paid, $68,069.11, was reached. But to arrive at the actual amount the Detroit Trust Company finally paid on the stockholder's assessment there must be deducted from the $68,069.11 the $18,-

650.28 it received through the Wayne county suit, leaving the net amount paid by the Detroit Trust Company $49,418.83; and resulted in the Croul estate or those interested therein having paid ($5,-723.71 plus $18,650.28) $24,373.99.

The controversy in the instant case is this: The Detroit Trust Company and the Croul estate, or those interested therein, having paid respectively on the stockholder's assessment $49,418.83 and $24,-373.99, in what manner should the liquidation dividends or reimbursement payments be made to these parties by the First Liquidating Corporation? (1) Should the Croul estate receive all of such dividends to the exclusion of the Detroit Trust Company; (2) should such dividends be prorated between these two claimants; or (3) should the Detroit Trust Company receive all such dividends until it is repaid in full?

Appellees' first contention is that:

"The appellees are entitled, to the exclusion of appellant Trust Company, to the entire liquidating dividends being paid by cross-appellant (First Liquidating Corporation)."

In reaching decision in the instant case, including this first issue presented by appellees, it is imperative to bear in mind that both the appellant and the appellees who are also cross-plaintiffs, insofar as they are seeking affirmative relief in this equity case, must do equity.

In support of their first contention above noted, with which we are not in accord, appellees urge the following reasons:

1. Appellees assert their right to be paid to the exclusion of the Detroit Trust Company on the ground that the trust company was not a *stockholder* in the closed bank, and was not liable for payment of the stockholder's assessment except liability in its

representative capacity to pay such assessment from funds of the estate. In this connection appellees in their brief say:

"Further, it is the *stockholder* who has the right to share in assets remaining after the claims of depositors are paid in full.   *   *   *   12 USCA, § 197, requires repayment of amounts *paid* in *by* any *shareholder by reason of* any and all *assessments made upon the stock.* The trust company individually was an assignee and not within the definition set forth by the statute."

Contrary to the above contention this record discloses that at the time the stockholders' assessment was levied the Detroit Trust Company was a stockholder in its representative capacity; and further, as hereinbefore noted, in its representative capacity being charged with *devastavit* in a suit wherein its liability was quite obvious, the Detroit Trust Company did in fact and under compulsion of the pending suit pay the major portion of the Croul stockholder's assessment out of its own funds.

2. Further, appellees assert in their brief: "In regards to (payment of) the assessment appellant was a mere volunteer." This position is not tenable for the obvious reason that instead of being "a mere volunteer," the Detroit Trust Company made its payment on the stockholder's assessment under compulsion of pending litigation which, if prosecuted to conclusion, quite obviously would have rendered the trust company liable for the amount it paid on the theory of *devastavit.* In their brief appellees say: "Any money paid out personally by appellant was due to the alleged acts of *devastavit.*"

3. And appellees further assert that since the trust company's payment of the major portion of the Croul stockholder's assessment was on the ground of its being guilty of *devastavit* it would be inequi-

table to permit the trust company to be reimbursed out of payments of the liquidation dividends. In considering the merits of this contention regard must be had to the actual facts in this case. There would be force to appellees' contention in this particular if the *"devastavit"* charged against the trust company had arisen from the trust company having appropriated to its own use or having released or transferred to third parties other than persons beneficially interested in the Croul estate assets of that estate. But that was not what happened in the instant case. Instead the *"devastavit"* charged against the trust company was its act in releasing to the only two persons beneficially interested under the Croul testamentary trust, Julia J. Croul and Frances Croul Furbeck, trust assets to the extent that the Croul estate became practically insolvent. The conduct of the Detroit Trust Company in this respect clearly constituted *"devastavit"* as to the bank's receiver; but certainly it cannot be said that it constituted *"devastavit"* as between the trust company and the persons beneficially interested in the Croul testamentary trust, who in fact received the dissipated assets of the Croul estate. Hence, in the instant case, which is a controversy between those beneficially interested in the Croul estate, and perhaps more particularly those having a beneficial interest in the Croul testamentary trust, it cannot be said that the Detroit Trust Company has been guilty of *"devastavit"* which would render it inequitable, as between these same parties, to permit the trust company to be reimbursed in whole or in part by payment to it of liquidation dividends by the First Liquidating Corporation. Our conclusion is, as indicated above, that appellees' contention that they are entitled, to the exclusion of the trust company, to all of the liquidation dividends is not tenable.

4. In conjunction with appellees' contention just above noted they present the following arguments, which in effect are in reply to certain theories of plaintiff in support of its contention that it is entitled to be reimbursed by receiving payments of liquidation dividends:

"Appellant did not gain any rights to the liquidating dividends by reason of the assignment to it by the receiver of the judgment gained in '*Barbour* v. *Thomas*' by the receiver against 'Julia J. Croul and Detroit Trust Co., executors U/W Frank H. Croul, deceased.' * * *

"If appellant obtained any right to receive liquidating dividends by reason of the assignment of judgment given it, such right was extinguished in it and transferred completely over to appellees as a result of the consent judgment (in the circuit court of Wayne county) entered into by these parties subsequent to the aforesaid assignment."

In view of our holding and the reasons therefor, hereinafter indicated, we are of the opinion that decision herein is not controlled by the decision in either the *Barbour-Thomas Case* or that in the Wayne county case.

5. Appellees' defense as based on their claim of *res judicata* of the right asserted by plaintiff in the instant case is, under the facts of this case, without merit. Neither of the suits to which reference is just above made had anything to do with the controversy involved in the instant case. As stated by appellees in their brief, their position is that the decree in the Wayne county case "was silent as to liquidating dividends." It is a fair inference from the record that at the time the suits hereinbefore noted were adjudicated none of the parties had any knowledge or thought of possible subsequent rights accruing to any of them out of payments of liquidation dividends. Any such unknown and remotely

contingent rights were not adjudicated in any of the former suits, including the portion of the decree in the Wayne county suit, hereinbefore quoted.

"The first essential of the rule of *res judicata* is the identity of the matter in issue. The 'matter in issue' is defined to be 'that matter upon which the plaintiff proceeds by his action, and which the defendant controverts by his pleadings.' " *LeRoy* v. *Collins*, 165 Mich. 380.

"But when a suit is sought to be maintained or defeated by showing former adjudication of questions upon which it depends, it must appear such questions were litigated as a matter of fact, were submitted to and decided by the jury, and were not collateral inquiries, but crucial questions in the other controversy. An adjudication in favor of a claim will not be conclusive of the minor issues on which the right depends unless it appears not only that they were submitted to the jury but were considered and passed upon by them." *MacKenzie* v. *Union Guardian Trust Co.*, 262 Mich. 563, 581.

Further we think the law stated in the two following cases in principle is also applicable to the instant case.

"It has been held repeatedly by this Court, supported by authority both Federal and State, that a court of equity will not assume jurisdiction to set aside a judgment of a court at law of competent jurisdiction on the ground that it is contrary to equity, *unless the defendant in the judgment was ignorant of the fact in question pending the suit,* or it could not be received as a defense at law, or unless, without any neglect or default on his part, he was prevented by fraud or accident or the act of the opposite party from availing himself of the defense." *Valley City Desk Co.* v. *Travelers' Insurance Co.*, 143 Mich. 468.

"A judgment in a court of law will not be set aside by a court of equity unless it is so manifestly wrong

that it is against good conscience. *Cleveland Iron Mining Co.* v. *Husby,* 72 Mich. 61. In order to set aside a judgment of law in equity, *there must be ignorance of the defense* when the judgment was rendered, diligence on the part of complainant, and the fact that adequate relief cannot be had at law." *Bassett* v. *Trinity Bldg. Co.,* 254 Mich. 207.

While the foregoing is sufficient to justify holding against appellees' assertion of *res judicata,* we may also note the following rather unusual aspect of the instant record. As inducement to securing a compromise settlement of the Wayne county suit, Julia J. Croul and Frances Croul Furbeck each made an affidavit. These affidavits were in very similar terms. We quote from Mrs. Furbeck's affidavit:

"The foregoing affidavit is given at this time to represent the full worth of your deponent, * * * it being fully understood by her that in making this affidavit if it develops subsequently that there are other assets that said settlement may be set aside as a fraudulent settlement."

The decree entered in the Wayne county case in part provided:

"And it further appearing to the court that the said Julia J. Croul and Frances Croul Paterson (Furbeck), as trustees, in accordance with affidavits and accounts filed in the probate court for the county of Wayne in the estate of Frank H. Croul, * * * have sold, assigned, transferred, dissipated and otherwise disposed of all of the assets of said estate. * * *

"And it further appearing to the court * * * that various negotiations have been had between the parties pertaining to compromise and settlement of the liabilities of said defendants, and the said plaintiffs * * * being informed of the available assets of the respective defendants, such compromise and settlement is entered into, in full reliance thereon."

In view of the above aspect of the Wayne county suit, it is not now equitably permissible to allow Frances Croul Furbeck, who it appears is the sole person interested in the residue of the Croul estate, to urge as a defense that the Wayne county case is *res judicata* of the instant suit.

Our review of this record brings the conclusion that the noted prior litigation is not *res judicata* of the instant controversy and that decision in the instant case should be based upon the equities as between appellant and appellees. Further, we are of the opinion that the provisions of the Federal statute (12 USCA, § 197), which are applicable to receivers and other liquidating agents of national banks, appointed under the Federal statute, are not controlling under the circumstances of this case of the controverted issue as between appellant or appellees. Instead, as just noted, in this equity suit decision should be based upon the relative equities between appellant and appellees as disclosed by the record. This poses the question as to what are the relative equities of these parties.

It is the appellees, not the Detroit Trust Company, who stand in the shoes of the Croul estate. Primarily, the obligation to pay the stockholder's assessment was solely that of the Croul estate. It should have been paid out of the funds of that estate. To the extent that the assessment has been paid by the Detroit Trust Company ($49,418.83), those of the appellees who received the assets of the Croul estate have, without consideration, benefited at the expense of the Detroit Trust Company; and unless the trust company is reimbursed those appellees will have been thereby unjustly enriched. While it is true that it was in consequence of its having been charged with *devastavit* the Detroit Trust Company made its payment of the major part of the Croul stockholder's assessment, that fact cannot inure to

the benefit of appellees because, as hereinbefore stated, it was those who were beneficially interested in the Croul testmentary trust who received the Croul estate assets which resulted in the insolvency of the estate at least to the extent that collection in full of the Croul stockholder's assessment from the estate was rendered impossible. As between appellant and the appellees the equities are all with the former, and decision herein should be accordingly. It follows that plaintiff is entitled to the relief which it seeks.

The decree entered in the circuit court will be reversed and a decree entered in this Court providing that as funds for the repayment of the assessment on the 5,250 shares of the Croul stock become available, the First Liquidating Corporation in accord with the "plan" under which it is effecting this liquidation shall pay the liquidation dividends to the Detroit Trust Company to the exclusion of appellees herein until the total payments to the trust company shall be equal to the principal sum of $49,-418.83, with interest thereon at the legal rate from May 12, 1939, to the date or dates of repayment, interest payments prior to May 12, 1939, having been waived by appellant. Further, after appellant has been repaid as above provided, any further funds of like character becoming available as reimbursement dividends incident to the Croul stock shall be paid by the First Liquidating Corporation to the administrator of the Frank H. Croul estate to the exclusion of the appellant, the moneys so paid to be apportioned, subject to expense of administration, among the appellees in such proportion as they may agree upon or as an accounting then to be held shall show to be equitable. Appellant may have costs of both courts against appellees, provided it shall have only one-half of taxable costs for its brief, which is unnecessarily long and is largely devoted to the is-

sue unsuccessfully urged by it against cross-appellant, First Liquidating Corporation.

*Cross Appeal of First Liquidating Corporation.*
In support of its cross appeal the First Liquidating Corporation assigns the following reason:

"The trial court erred in failing to hold that the distribution of the proceeds of liquidation of the assets of First National Bank-Detroit by defendant and cross-appellant, First Liquidating Corporation, involved in this case is governed by the plan of liquidation of assets of First National Bank-Detroit, dated September 18, 1942, and specifically by subsection 11 (f) of such plan."

Subsection (f) above referred to provides that funds of the character here involved "be distributed (by First Liquidating Corporation) from time to time in the following order:

"(f) To the persons who made payment to the receiver on account of assessments on the stock of the bank, ratably in proportion to the amount paid by each such person on the principal of such assessment, without interest."

Plaintiff in its appeal challenges the right of First Liquidating Corporation to make payment of liquidation dividends in accordance with the provisions of paragraph (f); and on the contrary asserts that the distribution of liquidation dividends should be made in accordance with 12 USCA, § 197, insofar as its provisions are not in accord with paragraph (f). Plaintiff's contention in this regard is not tenable. As hereinbefore noted, the cited provisions of the Federal statute are applicable to receivers of national banks or other liquidating agents appointed under the Federal statute. Distribution of liquidation dividends in the instant case is not being made by such a receiver or liquidating agent. The provisions of the Federal statute ceased to control the

distribution of funds derived from liquidation of the bank's assets when, under order of the Federal court and approval of the comptroller of the currency, the residue of the assets of the bank (with certain exceptions not here important) were purchased by and transferred to the First Liquidating Corporation, and under an express provision that the payments to be made of liquidation dividends should be made in accord with the "plan" embodied in the corporate articles under which First Liquidating Corporation became possessed of the residue of the unliquidated assets of First National Bank-Detroit.

To say the least it seems somewhat incongruous that plaintiff should make the contention just above noted since in paragraph 22 of its amended petition it alleges it "is now entitled to reimbursement * * * out of dividends as declared from time to time by First Liquidating Corporation in accordance with article 11 (f) of its official and presently effective 'Plan of Liquidation of Assets of First National Bank-Detroit.' "

The issue under consideration was injected into this appeal by plaintiff and inasmuch as its contention is not well founded the First Liquidating Corporation may have taxable costs of both courts against the Detroit Trust Company. The decree to be entered in this Court may also provide disposition of the foregoing issue in accordance herewith.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.