THOMPSON *v.* DOORE.

1. JUDGMENT—RES JUDICATA.
   Judgments in law actions are *res judicata* only as to matters in issue or that could have been put into issue.

2. EQUITY—JURISDICTION—SETTING ASIDE JUDGMENT AT LAW.
   Equity will not assume jurisdiction to set aside judgment of court of competent jurisdiction on the ground it is contrary to equity unless defendant in the judgment was ignorant of fact in question pending suit, or it could not have been received as a defense at law, or unless, without any neglect or default on his part, he was prevented by fraud or accident or act of opposite party from availing himself of the defense.

3. EJECTMENT—EQUITABLE TITLE—LEGAL TITLE.
   In an action of ejectment an equitable title cannot be set up as defense against a legal title.

4. EQUITY—JUDGMENT—SETTING ASIDE.
   A judgment in a court of law will not be set aside by a court of equity unless it is so manifestly wrong that it is against good conscience.

5. SAME—GROUNDS FOR SETTING ASIDE JUDGMENT.
   In order to set aside a judgment of law in equity, there must be ignorance of the defense when the judgment was rendered, diligence on the part of complainant, and the fact that adequate relief cannot be had at law.

6. SAME—JUDGMENT WILL NOT BE SET ASIDE ON GROUNDS PRESENTED IN LAW CASE.

A court will not set aside a judgment because it was founded on a fraudulent instrument, perjured testimony, or for any matter if these questions were actually presented or considered in the case which resulted in the judgment assailed.

7. JUDGMENT—RES JUDICATA.

Defendant in action of ejectment who was not ignorant of equitable defense thereto but who failed to take any legal proceedings to arrest ejectment action before judgment therein may not assert said right in new action commenced after rendition of judgment in ejectment.

Appeal from Wayne; Toms (Robert M.), J. Submitted October 5, 1934. (Docket No. 22, Calendar No. 37,969.) Decided December 10, 1934. Rehearing denied January 29, 1935.

Bill by William B. Thompson, administrator *de bonis non* with will annexed of the estate of Catherine M. Brown, deceased, against Mattie Doore and Annabelle Fraser to set aside a judgment in an ejectment action, to have a deed declared a nullity and for other relief. Decree for plaintiff. Defendants appeal. Reversed, and bill dismissed.

*William F. Connolly* and *Sempliner, Dewey, Stanton & Honigman (Jason L. Honigman,* of counsel), for plaintiff.

*Shields, Silsbee, Ballard & Jennings (Shapero & Shapero,* of counsel), for defendants.

EDWARD M. SHARPE, J. Prior to December 1, 1917, Robert Minnis and Catherine Minnis, his wife, owned jointly as tenants by the entirety considerable real estate in the city of Detroit. The accumulation of this property began as far back as 1892 and was acquired largely through the efforts of Catherine Minnis. She operated boarding houses and hotels,

invested wisely and eventually accumulated a number of parcels of valuable real estate, and among them a piece of property known as the Charlotte street property and described as follows:

The southerly 70 feet of lots 17 and 18, block 86 of the Cass Farm, according to the plat thereof recorded in liber 4 of plats on page 270, Wayne county records, said property being situate in the northwest corner of Second and Charlotte avenues.

The record also discloses that throughout this period of their lives, Robert Minnis was addicted to the excessive use of intoxicating liquors, and during such times he would be away from home; sometimes for a few days, and sometimes the period of relaxation would last two weeks, during which time Robert Minnis was, in the opinion of Catherine Minnis, too liberal in spending money. This caused many quarrels between the parties and often led to temporary separations.

Finally, Mrs. Catherine Minnis becoming desirous of limiting the amount of money that Robert Minnis could spend, suggested a division of their properties so that she could have a definite income, and at the same time limiting the income of Robert Minnis. Accordingly, on December 1, 1917, they entered into a property settlement in which they divided their joint properties practically equally between them. This was accomplished by Catherine Minnis conveying to Robert Minnis by quitclaim deed the property in question as well as other property, and Robert Minnis conveying to Catherine Minnis his interest in joint property of equal value. The deeds of conveyance were delivered but not recorded.

About April 20, 1918, Robert Minnis became ill with pneumonia and was removed to a hospital and

died April 25, 1918. A day or two prior to the death of Robert Minnis, Catherine Minnis went to William H. Gallagher, an attorney of Detroit who had prepared the deeds and who had upon many occasions acted as attorney for the parties and who had in his possession the unrecorded deeds given by Catherine Minnis to Robert Minnis, and asked him to destroy the deeds. This he declined to do, but did go to the hospital, taking the deeds with him, and gave them to Robert Minnis who thereupon tore them into 12 fragments. After this was done, Mr. Gallagher gathered up the fragments of the deeds and took them away with him keeping them several months, and later giving to Catherine Minnis one half of the fragments. After the death of Robert Minnis, Catherine Minnis went into possession of the real estate and died December 19, 1923.

Defendants Mattie Doore and Annabelle Fraser are the sole heirs of Robert Minnis. They were unaware of the deeds or their attempted destruction until some time in the summer of 1931 and in September of that year they commenced suit in the circuit court of Wayne county in ejectment for the purpose of recovering the Charlotte property.

This suit resulted in a judgment in favor of the heirs of Robert Minnis on April 21, 1933. In September, 1933, plaintiff, as administrator of the estate of Catherine Minnis, or Catherine Brown, filed a bill of complaint against defendants asking the judgment in ejectment be held for naught and that the deed from Catherine Minnis to Robert Minnis be canceled. The trial court held with plaintiff and defendants appeal.

The plaintiff contends that a judgment in an action of ejectment is not *res judicata* as to equitable defenses not available therein, and that the mutual cancellation of unrecorded deeds in order to revest

title in grantor holding record title may be enforced in equity when based on valid consideration or other elements of estoppel, citing *Pollock* v. *Gilbert* 16 Ga. 398 (60 Am. Dec. 732); while the defendants contend that the statute of frauds (3 Comp. Laws 1929, § 13411) prevents the destruction of an unrecorded deed from revesting title in the grantor, citing *Paw Paw Savings Bank* v. *Free,* 205 Mich. 52, and that in permitting the ejectment case to go to final judgment, plaintiff acquiesced in the principle that the court had jurisdiction and could decide the entire controversy, and that any other title which he had was waived, together with any remedies that he might have obtained in another forum, but which were available to him in the forum in which he submitted his case.

The general rule is that judgments are *res judicata* only as to matters in issue or that could have been put into issue in the law action. *Valley City Desk Co.* v. *Traveler's Ins. Co.,* 143 Mich. 468, 470:

"It has been held repeatedly by this court, supported by authority both Federal and State, that a court of equity will not assume jurisdiction to set aside a judgment of a court at law of competent jurisdiction on the ground that it is contrary to equity, unless the defendant in the judgment was ignorant of the fact in question pending the suit, or it could not be received as a defense at law, or unless, without any neglect or default on his part, he was prevented by fraud or accident or the act of the opposite party from availing himself of the defense. *Mack & Davis* v. *Doty,* Harr. Ch. (Mich.) 366; *Miller* v. *Morse,* 23 Mich. 365; *Kelleher* v. *Boden,* 55 Mich. 295, and cases cited."

Nor can equitable defenses in the nature of an equitable title be set up as a defense against a legal

title. *Michigan Land & Iron Co.* v. *Thoney,* 89 Mich. 226, 231:

"Nothing is better settled in this State than that in an action of ejectment an equitable title cannot be set up as defense against a legal title. *Buell* v. *Irwin,* 24 Mich. 145; *Ryder* v. *Flanders,* 30 Mich. 336; *Harrett* v. *Kinney,* 44 Mich. 457; *Geiges* v. *Greiner,* 68 Mich. 153."

See, also, *Hayes* v. *Livingston,* 34 Mich. 384 (22 Am. Rep. 533); *Frenzel* v. *Hayes,* 242 Mich. 631; *Harrett* v. *Kinney,* 44 Mich. 457, and cases cited therein.

We think the general principle of law is well settled in this State. In *Bassett* v. *Trinity Building Co.,* 254 Mich. 207, 211, this court, speaking through Mr. Justice BUTZEL, said:

"A judgment in a court of law will not be set aside by a court of equity unless it is so manifestly wrong that it is against good conscience. *Cleveland Iron Mining Co.* v. *Husby,* 72 Mich. 61. In order to set aside a judgment of law in equity, there must be ignorance of the defense when the judgment was rendered, diligence on the part of complainant, and the fact that adequate relief cannot be had at law. *Taylor* v. *Sutton,* 15 Ga. 103 (60 Am. Dec. 682).

"A court will not set aside a judgment because it was founded on a fraudulent instrument, perjured evidence, or for any matter if these questions were actually presented or considered in the case which resulted in the judgment assailed."

The defense in the ejectment case was purely equitable and could not have been made available as a legal defense, and the question here is, was the defendant in the ejectment suit bound to arrest the proceedings at law before trial; and failing to do

so, does he come now too late to obtain the intervention of a court of equity, after judgment?

When the ejectment case was tried in November, 1932, the plaintiff in the instant case had the information and knowledge upon which he later founded his bill in equity. It would appear then that plaintiff intended to risk an adjudication of his right in the law action, and, failing there, to institute an action in equity to restrain proceedings in the law action. If we are to measure the rights of the parties herein by the rule laid down in *Bassett* v. *Trinity Building Co., supra,* and we think it is the proper rule, then the plaintiff, not being ignorant of his defense in the ejectment suit, and having failed to take any legal proceedings to arrest the ejectment action before judgment therein, is now denied the right to assert it in a new action three months after judgment rendered in the ejectment action and approximately 16 months after he had some knowledge of it.

The decree of the lower court will be set aside and the bill dismissed. Defendant will recover costs.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, and BUTZEL, JJ., concurred with EDWARD M. SHARPE, J.

WIEST, J. I concur. When the husband and wife executed the deeds titles became vested upon delivery and could not be devested by destruction of the instruments.

In the ejectment suit there was no defense, legal or equitable, and the court of equity had no power to decree otherwise.

BUSHNELL, J., did not sit.