ALGER *v.* DAVIS.

1. EQUITY—ADEQUACY OF REMEDY AT LAW.
   Generally, suit in equity will not lie where the remedy at law is full and adequate and the fact that the construction of a contract or statute or other serious questions of law or fact are involved affords no ground for equitable relief.

2. SALES—CONDITIONAL SALE—TITLE.
   A conditional sale is an agreement for the sale of a chattel in which the vendee undertakes to pay the price, and possession is immediately given to the vendee but title is retained by the vendor until the purchase price is paid, when it passes to the vendee; a right of reclamation being vested in the vendor in case of default or the alternative of passing the title by suit for the purchase price.

3. EQUITY—ADEQUACY OF REMEDY AT LAW.
   A remedy at law, in order to preclude a suit in equity, must be complete and ample, and not doubtful and uncertain.

4. SAME—ADEQUACY OF REMEDY AT LAW—SALE OF GASOLINE STATION.
   Plaintiff, vendor of gasoline station business in station in which he had leased from lessors who, subsequent to expiration of lease, leased station to defendant who had acquired the station from assignees of plaintiff's vendees, had an adequate remedy at law in either replevin or trover against defendant to recover money due or property of the business in which title had been retained by plaintiff upon sale to his vendees, there being no privity of contract between plaintiff and defendant.

Appeal from Wayne; Maher (Thomas F.), J. Submitted April 6, 1956. (Docket No. 38, Calendar No. 46,665.) Decided May 14, 1956.

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 19 Am Jur, Equity § 101.
[2] 47 Am Jur, Sales § 828.
[2] What amounts to a conditional sale.    17 ALR 1421; 43 ALR 1247; 92 ALR 304; 175 ALR 1366.
[3] 19 Am Jur, Equity § 112.

Bill by Chancey Alger, Blanche L. Alger, Lucy Tarquinio and John B. Cammarata against John W. Davis to determine amount due on title-retaining contract, for money judgment, and for equitable relief in aid of collection. Decree awarding personal property to plaintiffs Alger and otherwise dismissing bill. Plaintiffs appeal. Affirmed.

*O. Edgar Gambin* (*Carl T. Storm,* of counsel), for plaintiffs.

*Joseph Marvaso,* for defendant.

SHARPE, J. On October 14, 1954, plaintiffs, residents of Wayne county, Michigan, filed their bill of complaint in the circuit court of Wayne county in chancery against John W. Davis, defendant, for a money judgment, impression of an equitable trust, and the appointment of a receiver. The facts leading up to the filing of the bill of complaint are as follows: For some time prior to the filing of the above bill of complaint, plaintiffs Alger operated an oil and gasoline service station in the city of Detroit, with a lease expiring June 9, 1954. On September 9, 1952, they sold their interest in the business to Lucy Tarquinio and John B. Cammarata for the sum of $6,500 on a title-retaining contract, including the existing lease, payable as follows: cash payment of $1,250, and the balance at the rate of $176, plus interest, per month for 5 months, and thereafter at the monthly rate of $126, plus interest. The contract was recorded in the office of the register of deeds for Wayne county.

On January 4, 1954, Lucy Tarquinio and John B. Cammarata sold the gasoline station business, lease, stock and fixtures on a title-retaining contract to

Clifton Eubank and Daniel L. Smith for the sum of
$5,500, with a down payment of $700, leaving a bal-
ance of $4,800 to be paid at the rate of $162 per
month, plus instalment interest.   Out of the monthly
payment of $162 Lucy Tarquinio and John B. Cam-
marata were to pay $126, plus interest, to the first
title-retaining contract holders.   It also appears that
Clifton Eubank and Daniel L. Smith sold their inter-
est to Edward and Lindell E. Maynard, who on or
about July 31, 1954, sold both by option agreement
and bill of sale to defendant, John W. Davis.

It appears that when the Algers sold their interest
in the business to Lucy Tarquinio and John B. Cam-
marata, it was accepted by Tarquinio and Cam-
marata as follows:

"For $1 and other valuable considerations, receipt
of which is hereby acknowledged, the undersigned as-
signees hereby accept the foregoing assignment and
agree to perform all the terms and conditions in said
lease as tenants and to save and hold harmless the
above-signed assignors, said assignees having fully
inspected the premises and accepted as is, and having
read and fully understood the said lease prior to the
signing of said acceptance.
"Dated this 9th day of September, 1952.

> (s) John B. Cammarata
> (s) (X)
>     Lucy Tarquinio
>     her mark—witnessed by
> (s) Robert P. Van Wiemeersch

"In Presence of:
(s) Robert P. Van Wiemeersch
(s) Lawrence Sheridan"

At the same time the Algers executed a bulk sales
affidavit, a part of which reads as follows:

"Chancey Alger and Blanche L. Alger, his wife,
being first duly sworn, deposes and says that they

make this affidavit for the purpose of complying with the bulk sales act of the State of Michigan.

"Deponents further state that the following is a full, complete, and accurate listing of all their creditors together with their addresses and the amount of indebtedness due or owing to them or to become due or owing to them as a result of their operation of that certain gas station business located at 10946 Kercheval avenue, Detroit, Michigan up to the time of the sale of said business to John B. Cammarata, of the city of Detroit, Michigan and Lucy Tarquinio:

| Name of creditor | Address | Amount due |
|---|---|---|
| Edward Belzyt and Joan Belzyt, his wife, | 7527 Jos. Campau, | $1,115 Approximately |

"Deponents further state that they will pay such creditor."

The agreement between Lucy Tarquinio and John B. Cammarata to Clifton Eubank and Daniel L. Smith provided for the sale of the stock, gasoline station, business, and equipment and gave the right to Eubank and Smith to sell their equity in the business at any time without the written consent of Tarquinio and Cammarata. The agreement also provided:

"Fourth: That the title to said property and business and right to possession thereto shall be and remain in said vendor until the said sum of $5,500, plus interest as aforesaid, is paid in full.

"Fifth: That in case of default in any of the payments of principal or interest, when due as above specified, and for 10 days thereafter, the said vendor shall thereupon forthwith have the right to declare this contract at an end and to take immediate possession of said above-described property and resell; and, in such case, the said property and business, as well as all payments of principal or interest which

shall have been made hereon, shall belong to and be retained by said vendor as liquidated damages for nonperformance of this contract on the part of the said vendee, and for use of and injury to said property."

The transfer of the business to Eubank and Smith was accompanied by a bulk sales affidavit showing the amount due the Algers. The bill of sale from the Maynards, dated July 31, 1954, to John W. Davis transferred their equity in the business. The bulk sales affidavit accompanying the bill of sale contains the following:

"That said stock, equipment and gas station business are free, clear of all liens and encumbrances, and is not indebted to any person, firm, or corporation, except as stated in the bill of sale. Nor has it any debts against it of any nature whatsoever growing out of the ownership, management or control of it by said Edward Maynard and Lindell E. Maynard."

The so-called option agreement from the Maynards to Davis provided:

"Parties of the first part agree to let party of the second part operate the above mentioned business for a period of 30 days from date. After such time if party of the 2d part finds the above business satisfactory and profitable, and there are no excessive debts against this business, party of the second part agrees to buy the business for the sum $1,700, $1,000 cash. And $700 within 6 months from date of this agreement. Providing party of the 2d part can get a lease on the above premises. If at the end of 30 days if the business is not profitable and satisfactory, party of the 2d part agrees to return the business in same manner and condition he found it. And the said party of the 2d part covenants and agrees to pay unto the said parties of the first part, for the same, the sum of as already stated —— dollars, law-

ful money of the United States, as follows: ——
with interest at the rate —— per cent, per annum
——."

On August 18, 1954, Salvatore Spano and wife
leased the premises in question to John W. Davis
for a period extending from August 9, 1954, to February 8, 1955, at a monthly rental of $310, and by a
separate writing John W. Davis was given the first
chance to purchase the premises and equipment for
the sum of $50,000 if the owner decided to sell the
same. On February 10, 1955, John W. Davis assigned the above lease to plaintiffs herein, but they
did not accept the same.

About 2 weeks after Davis accepted the premises
he was interviewed by Mr. Alger, and at that time
Davis told Alger that he would not pay the balance of
the Alger account of $3,828. It also appears that
Mrs. Cammarata talked to Davis on 2 occasions in
August, and upon the last occasion Davis told Mrs.
Cammarata that he would not pay the debt and ordered her to remove her stock and equipment. On
about August 23, 1954, Mr. Alger and Carl T.
Storm, attorney for Alger, interviewed Davis, demanding assumption or payment of the $3,828, or return of the business, and were refused.

On October 14, 1954, plaintiffs filed their bill of
complaint. Receivership was denied by the court
on December 10, 1954, but the court ordered Davis to
file monthly reports and pay $162.50 monthly into
court pending a final hearing of the cause. The
cause came on for trial, and at its conclusion the trial
court dismissed plaintiffs' bill of complaint, ordered
a return of $487.50 to defendant, which he had paid
into the office of the county clerk, and ordered that
the personal property and leasehold rights in the
premises be returned to Chancey Alger and Blanche
L. Alger.

Plaintiffs appeal and urge that the court was in error in holding that plaintiffs had no right of election of remedies and were limited to repossession of the personal property. Defendant urges that plaintiffs' rights as a seller under a conditional sales contract consist of either taking back the personal property or bringing a law action for the purchase price for which they had an adequate remedy at law.

In *Gitchell* v. *National Bank of Detroit,* 292 Mich 586, 589, we said:

"It is a general principle of law that where the remedy at law is full and adequate, a suit in equity will not lie. In *City of Iron Mountain* v. *Iron Mountain Waterworks,* 206 Mich 537, 544, we said:

" 'The rights of these parties spring solely from legal duties and obligations. That the construction of a contract, or statute, or other serious questions of law or fact are involved, affords no ground for equitable interference. Plaintiff's demand is for a money judgment, and on the issues presented it has a plain, complete and adequate remedy at law.'

"See, also, *Detroit Trust Co.* v. *Old National Bank of Grand Rapids,* 155 Mich 61; *Hall* v. *Detroit Estates Corp.,* 256 Mich 121; *Paeth* v. *Squire,* 277 Mich 283; *Grubiak* v. *United Store Fixture Co., Inc.,* 281 Mich 576."

In the case of *In re Petition for Dissolution of Parkstone Apartment Co.,* 243 Mich 401, we had occasion to define the term "conditional sales agreement" and the rights of a vendor by virtue of such an agreement. We there said (pp 404, 405):

"A conditional sale is an agreement for the sale of a chattel in which the vendee undertakes to pay the price, and possession of the chattel is immediately given to the vendee, but the title to the same is retained by the vendor until the purchase price is paid, when it passes to the vendee. *Young* v. *Phillips,* 203 Mich 566. It gives possession of the chattel

with the right to ownership upon payment of the agreed price, retaining title in the seller with right of reclamation in case of default or the alternative of passing the title by suit for the purchase price. *Burroughs Adding Machine Co.* v. *Wieselberg,* 230 Mich 15.    *    *    *

"In all of the contracts here involved the right of the vendor upon default in the payment by the vendee was to exercise its right to take the property, or at the option of the vendor to sue upon the contract and recover judgment for the purchase price."

Plaintiffs rely upon *Powers* v. *Fisher,* 279 Mich 442, where we held that a remedy at law, in order to preclude a suit in equity, must be complete and ample, and not doubtful and uncertain.

In the above case plaintiff filed a bill in chancery to foreclose a contract, for a deficiency decree and other relief. The trial court transferred the cause to the law side of the court. The subject matter of the issues was the sale of the good will and certain property connected with the dairy business. Upon appeal to the Supreme Court we reversed the case and held that plaintiffs' remedy at law was not adequate. We there said (pp 449, 450):

"The contract in question agrees to sell the good will and the dairy business. Personal property is divided into corporeal and incorporeal, tangible and intangible. Plaintiffs, if relegated to an action at law, may not maintain replevin because the good will and the dairy business are not tangible or visible. It may not be felt or touched. It cannot be made the subject of replevin. Replevin will not lie for incorporeal personal property. *Ashton* v. *Heydenfeldt,* 124 Cal 14 (56 P 624) ; 54 CJ, Replevin, § 7, p 421. Plaintiffs may not maintain trover for the good will and dairy business. Trover lies only for tangible property.  65 CJ, Trover and Conversion, § 11, p 18.  It will not lie for the good will of a business, *Adkins* v. *Model Laundry Co.,* 92 Cal App 575

(268 P 939); nor for a laundry route, *Olschewski* v. *Hudson,* 87 Cal App 282 (262 P 43); *Meier* v. *Wilkens,* 15 App Div 97 (44 NYS 274).

"If plaintiffs may not maintain an action of replevin to recover the good will and the dairy business and can recover in an action of replevin only the tangible personal property, then plaintiff's remedy is not complete. If plaintiffs may maintain an action for trover or conversion of the tangible personal property, they are still without a remedy for the good will and the dairy business. Their remedy is not complete. If they are relegated to an action of assumpsit, they can maintain an action of assumpsit only against the vendees under the original contract, and, if they recover against them, such vendees may maintain suit in assumpsit against the assignees of the vendees under the contract. And it is precisely to bring all the parties before the court to settle all this litigation in one suit and afford the plaintiffs a complete and adequate remedy, which they cannot have in a court of law, that the proceeding is instituted in a court of chancery."

It should be noted that the basis for decision in the above case is that it is impossible to recapture "good will" in a replevin action. In the case at bar the item of good will was not involved. We also note that the Alger lease from their lessors expired June 9, 1954, and that Davis leased the property from the owners on August 18, 1954. Hence, it follows that at the time Davis leased the property the plaintiffs had no leasehold rights therein. It necessarily follows from these facts that plaintiffs' interest in the subject matter of this suit was the personal property, and there being no privity of contract between plaintiffs and defendant, plaintiffs' right of action against Davis must be limited to the merchandise on hand at the time defendant took possession of the gasoline station. If defendant has disposed of property belonging to plaintiffs, then an action for trover

or conversion is an appropriate remedy, or if the personal property remains intact, then an action in replevin is an appropriate remedy. In either event a law action can fully protect plaintiffs' rights.

The order dismissing plaintiffs' bill of complaint is affirmed, with costs.

DETHMERS, C. J., and SMITH, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.

The late Justice REID took no part in the decision of this case.