# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN HAMILTON,

        Plaintiff/Counter-Defendant-
        Appellant,

v

ARTHUR JEANNOT AND MAUREEN
JEANNOT,

        Defendants-Appellees,

and

EDEN BROOK, LLC,

        Defendant/Counter-Plaintiff-
        Appellee,

and

ROBERT KAUFMAN,

        Appellant.

UNPUBLISHED
September 3, 2015

No. 321952
Benzie Circuit Court
LC No. 13-009645-CZ

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

In this dispute arising from a failed business relationship, plaintiff, Steven Hamilton, appeals by right the trial court's order dismissing his claims against defendants, Arthur Jeannot, Maureen Jeannot,[1] and Eden Brook, LLC, granting Eden Brook's motion for summary disposition of its counter-claims against Hamilton for breaching two promissory notes, and ordering Hamilton to pay sanctions for filing frivolous claims. For the reasons more fully explained below, we conclude that the trial court erred when it dismissed Hamilton's claims. Moreover, although the trial court did not err when it determined that Eden Brook was entitled to

---

[1] Because the events at issue primarily involve allegations against Arthur Jeannot, we shall refer to him as Jeannot. We shall refer to Arthur and Maureen Jeannot collectively as the Jeannots.

-1-

summary disposition on one of its counter-claims for breach of a promissory note, because there was evidence from which a reasonable jury could conclude that Eden Brook failed to advance the consideration in support of the other promissory note, the trial court erred when it granted summary disposition in favor of Eden Brook on that note. Finally, we conclude that the trial court clearly erred when it found that Hamilton's claims were frivolous. For these reasons, we affirm in part, reverse in part, vacate in part, and remand for further proceedings.

## I. BASIC FACTS

The events at issue arise from the parties' efforts to renovate and reopen the Brookside Inn and Restaurant in Benzie County, Michigan.[2] Kirk Lorenz formerly owned the inn with his wife, but they were unable to meet their financial commitments to Honor State Bank. The bank sued Lorenz and his wife and the Circuit Court entered a judgment against them in October 2008. In the judgment, the Circuit Court ordered the foreclosure and sale of the Brookside Inn. It also provided that Honor State Bank was "entitled to immediate possession of all of the personal property of Kirk and Pamela Lorenz, individually and doing business as Brookside Inn, including, without limitation, all of the accounts receivable, inventory, equipment, instruments and general intangibles associated with the business . . . ."

Benzie Enterprises, Inc eventually acquired title to the personal property. In May 2011, Benzie Enterprises transferred the inn's personal property to Eden Brook. As part of the transfer, Honor State Bank agreed "to assist and cooperate and provide documentation reasonably requested" to confirm Eden Brook's ownership of the personal property. Eden Brook also purchased the real property upon which the Brookside Inn is located. Jeannot is the sole member of Eden Brook.

According to Hamilton, Jeannot approached him about helping with the reopening of the Brookside Inn. Hamilton had apparently been associated with the inn when Lorenz owned and operated it and had experience with operating a restaurant. Hamilton said that Jeannot told him that he would finance a new entity to operate the inn and, if Hamilton would manage and assist with the reopening, he would give Hamilton an equity interest in the new entity. Hamilton averred that he relied on the promise of a future equity interest and invested a "great deal of time to the reopening and refurbishing of the Brookside Inn." Indeed, he stated that he worked from February 2011 to June 2012 in reliance on Jeannot's representations. He also averred that he brought numerous items of personal property and equipment to the business.

---

[2] We have used depositions, affidavits, and documentary evidence that were submitted to the trial court, but not necessarily cited by the parties, in order to provide a fuller understanding of the background facts. However, to the extent that the evidence was not specifically cited as evidence in support or opposition to the motion for summary disposition under MCR 2.116(C)(10), we have not considered it in our review of the motion. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 380; 775 NW2d 618 (2009) ("When reviewing a motion for summary disposition, this Court's review is limited to review of the evidence properly presented to the trial court.").

Jeannot stated that, in July 2011, Lorenz asked through Hamilton for permission to remove certain personal items from the inn. Jeannot said Hamilton had three days to remove the items claimed by Lorenz. Lorenz did not thereafter make any formal claim to the personal property located at the inn.

Jeannot stated that he consulted with Hamilton regarding the remodeling of the inn and compensated him for his work, but never promised or agreed to give Hamilton an ownership interest in the inn or any other business. According to Jeannot, Hamilton intended to operate a restaurant at the Brookside Inn with financing from Jeannot.

In February 2012, Hamilton executed a promissory note with a principal amount of $4,000, which was "for the purpose of corporate start up funds and other related living expenses." Under the terms of the note, Hamilton agreed to pay "to the order of Art Jeannot of Eden Brook LLC" the principal and 10% interest with one payment of $4,267 in September 2012. Hamilton executed a substantially similar promissory note in March 2012. In that note, Hamilton promised to pay principal of $35,000, plus 10% interest with one payment of $38,500 in March 2013. In addition, Hamilton executed a commercial lease with Eden Brook in March 2012. Hamilton agreed to lease portions of the Brookside Inn—the restaurant, bakery, deck and basement—from Eden Brook for $8,000 per month.

The Brookside Inn reopened under Hamilton's management in June 2012. Jeannot testified that all of the receipts from the inn were deposited into the accounts of an entity owned by him and his wife. Similarly, although Jeannot stated that Hamilton employed the inn's staff, he admitted that one of his entities paid the payroll for the employees at the inn. Later that same month, Jeannot met Hamilton in the inn's parking lot and told him that "his services would no longer be needed at the Brookside." He asked Hamilton to turn over a "Micros card, a key to the building, [and] a key to the post office box." Jeannot stated that he severed his relationship with Hamilton because Hamilton failed to obtain a liquor license for the Brookside Inn and engaged in other incidents of mismanagement and misuse of funds. The staff at the inn did not leave with Hamilton after Jeannot asked Hamilton to leave.

In March 2013, Hamilton sued the Jeannots and Eden Brook. For his first count, Hamilton stated that Jeannot defamed him on two occasions: he alleged that Jeannot told Nadine Lamont that Hamilton "either embezzled or attempted to embezzle funds" owned by Jeannot or his business and told Hamilton's landlady, Linda Sherman, that Hamilton no longer worked at the Brookside Inn and "would never find work in Benzie County again" because he had " 'burned too many bridges.' "

Hamilton alleged for his second count that he only worked to prepare the Brookside Inn for reopening on Jeannot's promise that he would receive compensation in the form of an ownership interest in the entity that would operate the inn, which he did not receive. Hamilton alleged that Jeannot and Eden Brook were unjustly enriched by retaining the benefit of his services without paying him compensation.

Hamilton also alleged that he had brought personal property to the inn for use in its operation. For his third and fourth counts, Hamilton claimed that the Jeannots and Eden Brook wrongfully converted these items and demanded that they return them.

Eden Brook counter-sued Hamilton in April 2013. It alleged that Hamilton breached his promise to repay the $4,000 and $35,000 notes with interest. It also alleged that Hamilton's failure to repay amounted to a breach of contract and unjust enrichment.

In answer to Eden Brook's complaint, Hamilton alleged that he was fraudulently induced to work to reopen the Brookside Inn without compensation. He also asserted that he executed the $4,000 note under duress and that the note for $35,000 was a sham and that he never received the principal amount stated in the note. Further, he claimed that any amount he might owe should be set-off against the damages that Jeannot or Eden Brook might owe to him.

In July 2013, the trial court ordered this case to be consolidated with a suit brought by Lorenz against Jeannot and Eden Brook. The trial court provided that the cases were only consolidated for purposes of discovery and motion practice. Like Hamilton, Lorenz had alleged a claim for conversion and claim and delivery involving property that he had at the inn.

In August 2013, the Jeannots and Eden Brook moved for summary disposition of Hamilton's claims against them and Eden Brook moved for summary disposition on its counter-claims. The trial court held a hearing on the motion in February 2014.

After hearing the parties' arguments, the trial court determined that the Jeannots and Eden Brook were entitled to summary disposition on all the claims and counter-claims. It stated that there was no factual dispute concerning Hamilton's liability on both notes. It also determined that Hamilton and Jeannot structured their relationship under the terms of the lease agreement. Because there can be no unjust enrichment where there is an explicit contract governing the parties' relationship, the court explained, Hamilton's unjust enrichment claim failed as a matter of law. The trial court also determined that Hamilton's long delay in bringing his claims for conversion and claim and delivery prejudiced the ability of the Jeannots and Eden Brook to present a defense to those claims. Accordingly, it applied the equitable doctrine of laches to bar those claims. Finally, the trial court noted that Jeannot submitted an affidavit where he stated that any statements that he had made concerning Hamilton were opinions. Because Hamilton failed to present any evidence that Jeannot made the alleged statements with malice, the trial court determined that there was no factual dispute that the statements were not actionable.

The trial court further opined that the Jeannots and Eden Brook were entitled to their attorney fees. Because the trial court found that Hamilton's claims were frivolous, it determined that the Jeannots and Eden Brook were entitled to the fees they incurred defending against Hamilton's claims. The trial court also determined that the Jeannots and Eden Brook were entitled to the fees incurred to enforce the notes under the terms of those notes.

In March 2014, the trial court entered an order dismissing Hamilton's claims and granting judgment in favor of Eden Brook on the two promissory notes. The trial court further ordered Hamilton and his lawyer, Robert Kaufman, to pay the Jeannots and Eden Brook $18,423.38 in attorney fees as a sanction under MCL 600.2591 and MCR 2.114 for filing frivolous claims.

Hamilton and Kaufman then appealed in this Court.

## II. CONVERSION AND CLAIM AND DELIVERY

### A. STANDARDS OF REVIEW

Hamilton first argues that the trial court erred when it applied the equitable doctrine of laches to bar his claims for conversion and claim and delivery of his personal property. Specifically, he maintains that the trial court could not apply an equitable defense to bar his claims because those claims were claims at law, not equity. He argues in the alternative that the trial court erred when it determined that Hamilton's delay in asserting his rights warranted application of laches. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo whether the trial court properly applied an equitable doctrine, such as the doctrine of laches, to the facts of the case. *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013).

### B. ANALYSIS

### 1. LACHES AND CLAIMS AT LAW

A court sitting in equity would not grant equitable relief to a complainant who unreasonably failed to assert his or her claim: "If a plaintiff has not exercised reasonable diligence in vindicating his or her rights, a court sitting in equity may withhold relief on the ground that the plaintiff is chargeable with laches." *Knight*, 300 Mich App at 114. The equitable doctrine of laches is a "tool used to provide a remedy for the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert." *Id.* at 115. Thus, the doctrine of laches was part of the balancing of the equities involved in the claim and courts would apply it only when the prejudice occasioned by the delay justified barring it. *Id.*

Before the merger of law and equity, it was well-settled that an equitable defense could not be used to defeat a claim at law. See *Thompson v Doore*, 269 Mich 466, 470-472; 257 NW 864 (1934) (stating that defenses in equity cannot be raised in an action at law and holding that the complainant's failure to arrest the proceedings at law in order to assert his defenses in a court of equity precluded his later suit in equity). Indeed, our Supreme Court stated that, because claims at law were subject to periods of limitation set by the Legislature, laches could not be asserted to defeat a claim at law. *Lowry v Lyle*, 226 Mich 676, 684; 198 NW 245 (1924) (holding that the defense of laches was not available to defeat an action for ejectment during the period of limitations fixed by law because "commencing suit within the period allowed by law does not constitute unreasonable delay"); see also *Wehrman v Conklin*, 155 US 314, 326; 15 S Ct 129; 39 L Ed 167 (1894) ("It is scarcely necessary to say that complainants cannot avail themselves, as a matter of law, of the laches of the plaintiff in the ejectment suit. Though a good defense in equity, laches is no defense at law."). Hamilton's claims for conversion and claim and delivery are claims at law. See *Alger v Davis*, 345 Mich 635, 643-644; 76 NW2d 847 (1956) (affirming the trial court's decision to dismiss the plaintiffs' complaint in equity because the plaintiffs had adequate remedies at law: "If defendant has disposed of property belonging to plaintiffs, then an action for trover or conversion is an appropriate remedy, or if the personal property remains intact, then an action in replevin [claim and delivery] is an appropriate

remedy."). Therefore, under prior practice, the trial court could not have applied the doctrine of laches to bar his claims.

After the merger of law and equity, this Court continued to assert that laches was inapplicable to a claim at law brought within the applicable period of limitations. *Head v Benjamin Rich Realty Co*, 55 Mich App 348, 356; 222 NW2d 237 (1974) (stating that the defense of laches is inapplicable to a claim at law, but determining that—in any event—there was no prejudice occasioned by the delay). Although our Supreme Court has not directly considered the application of laches to actions at law after the merger, it has held that a related equitable defense—the clean hands doctrine—cannot be invoked to deny relief in an action at law. *Rose v Nat'l Auction Group*, 466 Mich 453, 467-468; 646 NW2d 455 (2002). Moreover, the Legislature enacted a comprehensive statutory scheme governing periods of limitation and did not see fit to adopt the doctrine of laches or something similar for application to all periods of limitation. It did, nevertheless, preserve the doctrine of laches for actions involving equity: "The prescribed period of limitations shall apply equally to all actions whether equitable or legal relief is sought. The equitable doctrine of laches shall also apply where equitable relief is sought." MCL 600.5815. By specifically providing that the doctrine of laches continues to apply, but only to actions involving equitable relief, the Legislature expressed its intent to limit the application of laches to claims involving equity; that is, the Legislature effectively codified practice as it existed prior to the merger of law and equity. And, our Supreme Court has held that courts should not apply common law rules that conflict with the Legislature's balancing of interests in setting limitations periods, times of accrual, and tolling for civil cases. See *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 390-393; 738 NW2d 664 (2007). Notwithstanding these authorities, this Court has held that courts may apply the doctrine of laches to bar actions at law, even when the period of limitations set by the Legislature has not passed. *Tenneco, Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 457; 761 NW2d 846 (2008), relying in relevant part on *Eberhard v Harper-Grace Hospitals*, 179 Mich App 24, 36; 445 NW2d 469 (1989). Although we would enforce prior practice and continue to limit the application of laches to actions in equity, as our Legislature apparently intended, the decision in *Tenneco* is binding on this Court. MCR 7.215(C)(2). Consequently, we are compelled to conclude that the trial court did not err when it determined that laches could apply to Hamilton's claims for conversion and claim and delivery. We do not, however, agree that the trial court properly applied the doctrine to the facts of this case.

## 2. APPLICATION OF LACHES TO THE FACTS

The Jeannots and Eden Brook filed a consolidated motion for summary disposition in August 2013. In their motion, they maintained that Lorenz had had an opportunity to retrieve his personal items from the inn in July 2011, which was shortly after Eden Brook purchased the inn and personal property. By refusing to contest the ownership of the personal property when Eden Brook's predecessors in interest took possession and failing to claim the property when he had the opportunity in July 2011, they maintained, Lorenz prejudiced their ability to defend his claims of conversion and claim and delivery. Accordingly, they asked the trial court to apply the equitable doctrine of laches to bar those claims.

In a supplemental brief in support of their motion, the Jeannots and Eden Brook argued that Hamilton had a similar opportunity to contest the ownership of any items that he had at the inn and failed to do so. They then asked the trial court to apply laches to bar his claims for conversion and claim and delivery on the same grounds. The trial court agreed that laches applied. It noted that the personal property had been foreclosed and Eden Brook was now the "third entity to have the property since the foreclosure." The court also felt that Hamilton had not vigorously asserted his right to the property:

> Plaintiff Hamilton was at the auction where many, if not most or all of these items which he claims, were auctioned off. Essentially, he slept on his rights through the auction and now comes back and says, oh, by the way, you sold off my property and I want it back.

> And, incidentally, it's interesting that he claims some of the same property as Plaintiff Lorenz claimed in a companion lawsuit.

> The claims are frivolous. There's no showing, no demonstration whatsoever that the foreclosing entity, the sheriff, or the purchasing entity at the sheriff's sale, or the entity that bought from the purchasing entity at the sheriff's sale, that any of these people were ever put on notice that there was a claim for personal property that was still on the premises.

For these reasons, the trial court applied laches to bar Hamilton's claims for conversion and claim and delivery.

As this Court has explained, when a party seeks summary disposition under MCR 2.116(C)(10), it must present evidence to the trial court that, if left unrebutted, would establish its right to relief. *Barnard Mfg*, 285 Mich App at 369-370, citing MCR 2.116(G)(3). A defendant to a civil action does not satisfy this burden by asserting his or her *belief* that the plaintiff will be unable to establish one or more elements of the claim at trial.[3] Rather, the moving party must demonstrate that the undisputed *facts* show that the moving party is entitled to judgment or partial judgment as a matter of law. MCR 2.116(C)(10). If the moving party fails to present evidence that if left unrebutted would establish his or her right to judgment as a matter of law, then the opposing party has no obligation to respond and the trial court should deny the motion on that basis alone. *Barnard Mfg*, 285 Mich App at 370; see also *Grandberry-Lovette v Garascia*, 303 Mich App 566, 580-581; 844 NW2d 178 (2014) (stating that the trial court should have denied the defendant's motion for summary disposition on the grounds that he had no notice of the defect because the defendant failed to present any evidence that a reasonably prudent premises possessor would not have discovered the defect with a reasonable inspection).

---

[3] Where the defendant is convinced that the plaintiff will be unable to support an element of the claim at trial, but does not wish to go to the effort to marshal his or her own proofs in a properly supported motion for summary disposition before trial, the defendant can simply wait for trial and move for a directed verdict after the plaintiff presents his or her case. See *Napier v Jacobs*, 429 Mich 222, 229-230; 414 NW2d 862 (1987).

It is only when the moving party adequate supports his or her motion for summary disposition under MCR 2.116(C)(10) that the burden shifts to the nonmoving party to present evidence that establishes a genuine issue of disputed fact. *Barnard Mfg*, 285 Mich App at 370.

The Jeannots and Eden Brook did not present any evidence to support their argument that Hamilton's failure to earlier assert his right to the property was unreasonable or caused them to suffer prejudice. The Jeannots and Eden Brook asserted in their brief that the property changed hands twice "since Lorenz and Hamilton had filled the restaurant with their claimed possessions", but failed to present any evidence that the items actually identified by Hamilton in his complaint were the same items of personal property present in the inn at the time of the foreclosure.[4] They also mentioned in their recitation of the facts that Hamilton had the opportunity to claim the items in July 2011 when he was given permission to remove items on Lorenz' behalf, but failed to present evidence that the items at issue were in the inn at that time or that Hamilton's authorization included the right to remove items on his own behalf. They also failed to analyze whether it would be practicable or reasonable for Hamilton to assert his rights to any personal property that he had at the inn at a time when he was actively supporting the effort by the Jeannots and Eden Brook to reopen the Brookside Inn. They also assert—again without citing any evidence to support the assertion—that Hamilton was at the auction where his items were purportedly sold in 2013, but failed to assert his rights at that time. Because the Jeannots and Eden Brook failed to present any evidence to identify the items at issue and demonstrate that Hamilton's failure to earlier assert his rights in the property prejudiced their ability to defend against Hamilton's claims for conversion and claim and delivery, the trial court should have denied their motion for summary disposition premised on laches. *Id.*

---

[4] If the Jeannots and Eden Brook had evidence that the items were subject to the judgment against Lorenz, then they would presumably be able to establish that they had superior rights to the property and could have prevailed on that basis. See *Thoma v Tracy Motor Sales, Inc*, 360 Mich 434, 438-439; 104 NW2d 360 (1960) (noting that the mechanic sold the car at issue in compliance with the relevant statutes to recover the value of the unpaid mechanic's lien and stating that, because the mechanic properly exercised his statutory right to sell the car, the sale did not constitute an act of wrongful dominion as to the plaintiffs); *Prime Financial Services LLC v Vinton*, 279 Mich App 245, 275; 761 NW2d 694 (2008) (stating that, as between two secured creditors, the junior creditor could not—as a matter of law—establish conversion of the collateral at issue because Article 9 of Michigan's Uniform Commercial Code authorized the senior creditor's actions with regard to the collateral); *Rohe Scientific Corp v National Bank of Detroit*, 133 Mich App 462, 468; 350 NW2d 280 (1984) ("Liability for conversion does not arise if the actor is privileged to dispossess another of the chattel. . . . If defendant's right to possession was greater than that of plaintiff's, plaintiff could not maintain an action for conversion."), reversed on other grounds on rehearing, 135 Mich App 777.

The trial court erred when it applied the doctrine of laches to dismiss Hamilton's claims for conversion and claim and delivery.[5]

## III. DEFAMATION

### A. STANDARDS OF REVIEW

Hamilton also argues that the trial court erred when it determined that his claim for defamation against Jeannot failed as a matter of law. This Court reviews de novo the trial court's decision on a motion for summary disposition. *Barnard Mfg*, 285 Mich App at 369. This Court also reviews de novo whether the trial court properly applied the common law. *Roberts v Salmi*, 308 Mich App 605, 612; 866 NW2d 460 (2014).

### B. ANALYSIS

Jeannot argued in his brief in support of his motion for summary disposition that Hamilton's claim for defamation failed as a matter of law because there was no evidence that Jeannot ever "issued any statements to any party that there was 'embezzlement' committed by Plaintiff Hamilton." Jeannot also argued that Hamilton's claim was unenforceable because Jeannot averred that any statements that he made were merely opinion.

The trial court agreed that the statements identified in Hamilton's complaint were not actionable. The court explained that the statement that Jeannot allegedly made to Sherman—that Hamilton would be unable to "find work" because he had "burned too many bridges"—was not actionable because it was just opinion. The court also determined that the statement Jeannot allegedly made accusing Hamilton of embezzlement was not actionable because Jeannot averred that the statement was opinion and Hamilton failed to present evidence that Jeannot actually made the statement.

In order to establish a claim of defamation at trial, the plaintiff must prove: (1) that the defendant made a false and defamatory statement concerning the plaintiff, (2) that the defendant made an unprivileged publication of the statement to a third-party, (3) that the defendant published the statement with fault amounting to at the least negligence, and (4) that the defamatory statement is actionable without regard to special harm (defamation per se) or that the publication caused special harm (defamation per quod). *Burden v Elias Bros Big Boy Restaurants*, 240 Mich App 723, 726; 613 NW2d 378 (2000). Although Hamilton had the

---

[5] Further, as we explain later in this opinion, the lease does not govern the parties' oral agreements concerning the restoration of the inn and, in any event, the lease does not purport to give the Jeannots or Eden Brook the right to convert Hamilton's personal property if left on the premises. Indeed, the lease specifically provides in sections 5.03 and 6.02 that Eden Brook remains liable for gross negligence or willful misconduct. Therefore, on this record, we decline to consider whether summary disposition as to these claims was appropriate on alternate grounds. Whether Hamilton's claims for conversion and claim and delivery remain viable is matter best addressed in a properly supported motion for summary disposition or at trial.

ultimate burden to prove his claim, because Jeannot was the moving party, he had the initial burden to identify the issue as to which he believed there was no genuine issue of fact and to present evidence that, if left unrebutted, established that he was entitled to judgment as a matter of law on that issue. *Barnard Mfg*, 285 Mich App at 369-370.

Jeannot argued before the trial court that there was no evidence that he made the alleged statements, but he did not present any evidence from which one could infer that he did not in fact make the statements. He did cite his own affidavit in support of his motion, but in that affidavit he carefully avoided discussing whether he actually made the statements: he averred that "[a]ny and all statements made by me . . . were statements of opinion" and that any "such statements were not made with actual malice or [any other] defamatory intent." Because Jeannot failed to present evidence that he did not make the statements, the trial court erred when it shifted the burden to Hamilton to present evidence that Jeannot did in fact make the statements. *Id.* at 370.

Nevertheless, Jeannot would still be entitled to summary disposition if he demonstrated that the alleged statements were not actionable, even if actually made. *Ireland v Edwards*, 230 Mich App 607, 616; 584 NW2d 632 (1998) (stating that courts may decide as a matter of law whether a statement is actually capable of defamatory meaning and that summary disposition is appropriate when the statement as alleged is incapable of carrying such a meaning). "A communication is defamatory if, considering all the circumstances, it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* at 619.

In this case, Hamilton alleged, in relevant part, that Jeannot told a third-party that Hamilton either embezzled money from Jeannot or attempted to do so. Jeannot did not deny that he made the statement, but averred that any statements that he might have made—such as accusing Hamilton of embezzlement—were merely his opinion, which he formed from his experiences with Hamilton. A statement of fact that another person has committed a particular crime or engaged in illegal conduct is defamatory per se. *Kevorkian v American Med Assoc*, 237 Mich App 1, 8; 602 NW2d 233 (1999). Moreover, Jeannot's averments that his statements—if he made them—were merely his opinion did not establish that this statement was not actionable. See *id.* ("Language that accuses or strongly implies that someone is involved in illegal conduct crosses the line dividing strongly worded opinion from accusation of a crime."). Because Jeannot did not deny that he made the statement and did not provide any context supporting an inference that a reasonable listener would not have taken the statement as an assertion of fact, Jeannot failed to establish that the statement to Lamont was not actionable as a matter of law. See *Ireland*, 230 Mich App at 617.

We also do not agree with the trial court's determination that the statement to Sherman was not actionable on its face. "[A] defamatory statement must be provable as false to be actionable." *Kevorkian*, 237 Mich App at 5. Statements that represent an opinion may or may not be actionable, depending on whether the opinion is objectively verifiable. *Ireland*, 230 Mich App at 616 (citations omitted). Whether Hamilton was employable in Benzie County is a subjective opinion that cannot be verified or proved false. But when taken in context, the statement implies more than just Jeannot's purported opinion about Hamilton's future employability—it implies that Hamilton engaged in inappropriate conduct that would justify members of the community in refusing to do business with him. Specifically, Hamilton alleged

that Jeannot told Sherman that Hamilton was unemployable in Benzie County because he "burned too many bridges." The ordinary understanding of the phrase "burned too many bridges" is that the person who burned the bridges has so abused his or her relationships with others that the others justifiably severed their relationships with that person. In the context of a statement about someone's employability, the phrase could be understood as an assertion of fact concerning Hamilton's mistreatment of his past business partners (that he engaged in dishonest business practices) and a reasonable finder of fact could infer that Jeannot offered the statement in an attempt to deter third-persons from associating or dealing with him. Thus, a reasonable jury could conclude that—understood in context—the statement that Jeannot allegedly made to Sherman was also capable of carrying a defamatory meaning. See *id.* at 619.

Because Jeannot did not present evidence that he did not make the statements as alleged by Hamilton, and the statements were either defamatory per se or capable of carrying a defamatory meaning, the trial court should have denied Jeannot's motion for summary disposition. *Barnard Mfg*, 285 Mich App at 370.

## IV. UNJUST ENRICHMENT

### A. STANDARDS OF REVIEW

Hamilton argues that the trial court also erred when it determined that the lease agreement he executed with Eden Brook barred his claims, including his claim for unjust enrichment. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg*, 285 Mich App at 369. This Court also reviews de novo the proper interpretation of a contractual agreement. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

### B. ANALYSIS

Hamilton alleged that Eden Brook and the Jeannots had unjustly retained the value of the labor he expended in preparing the inn for reopening without adequate compensation. Our Supreme Court "has long recognized the equitable right of restitution when a person has been unjustly enriched at the expense of another." *Michigan Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 198; 596 NW2d 142 (1999). "[U]nder the equitable doctrine of unjust enrichment, '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.' " *Kammer Asphalt Paving Co v East China Twp Schools*, 443 Mich 176, 185; 504 NW2d 635 (1993), quoting Restatement Restitution, § 1, p 12. In order to remedy an unjust enrichment, courts will indulge the fiction of a quasi or constructive contract to pay for the benefits received. *Id.* at 185-186. Nevertheless, because this "doctrine vitiates normal contract principles," Michigan courts will employ it with caution. *Id.* at 186.

The elements of a claim for unjust enrichment "are the receipt of a benefit by a defendant from a plaintiff, which benefit it is inequitable that the defendant retain." *Moll v Wayne Co*, 332 Mich 274, 278-279; 50 NW2d 881 (1952) (quotation marks, citation, and emphasis removed), overruled on other grounds in *Brown v Dep't of Military Affairs*, 386 Mich 194, 200-201; 191 NW2d 347 (1971). Courts use the phrase "unjust enrichment" to characterize the result that would follow if a party who obtained property or a benefit from another failed to make

restitution. *Buell v Orion State Bank*, 327 Mich 43, 56; 41 NW2d 472 (1950). The key consideration is whether the defendant's retention of the benefit would be unjust as between the parties. *Id.* ("No person is unjustly enriched unless the retention of the benefit would be unjust."). Generally, the test to determine whether the retention of a benefit is unjust as between two parties depends on a reasonable person standard: whether "reasonable men in like situation as those who received and are benefited . . . naturally would and ought to understand and expect compensation was to be paid." *In re Camfield Estate*, 351 Mich 422, 432; 88 NW2d 388 (1958) (quotation marks and citations omitted). "However, a contract will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Corp v City of Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003).

On this record, the trial court erred when it determined that the lease barred Hamilton's claim for unjust enrichment. The parties did not execute the lease until March 2012, which was months after Hamilton began to work at the inn. Further, under a plain reading of the agreement, Eden Brook merely leased portions of the Brookside Inn to Hamilton for the purpose of running a restaurant during the term of the lease. The lease does not purport to govern any other aspect of the relationship—prior or future—between Hamilton and Eden Brook. Further, the Jeannots were not parties to the lease. Consequently, the lease does not on its face expressly address Hamilton's efforts on behalf of the Jeannots or Eden Brook in preparing the inn for reopening.

In addition, Hamilton claimed that Eden Brook and the Jeannots actually retained control over the operation of the inn and restaurant; he averred that he merely acted as an employee and there was record evidence to support an inference that Hamilton served as an employee in some capacity. The evidence concerning the manner by which Jeannot ended Hamilton's association with the inn also suggests that Jeannot treated Hamilton as an employee and not a tenant; one does not normally evict a tenant by telling him that you no longer need his services. It is unclear what, if anything, the parties agreed to in terms of salary or compensation for Hamilton, and there is no written employment contract in the record. Because it is apparent that the lease agreement does not cover Hamilton's employment relationship with Eden Brook or the Jeannots, its existence does not bar Hamilton's claim that he is entitled to compensation for his services under a quantum meruit theory.

There is similarly a question of fact as to whether Eden Brook and the Jeannots unjustly retained the benefit of Hamilton's labor. Hamilton averred that he worked for them for 45 to 50 hours per week from February 2011 to June 2012. He stated that he did so under the belief that he would be given an ownership interest in the business and a salary of $1,000 per week for his services—neither of which materialized. Hamilton attested that he received a total of $1,000 in compensation for his work. Eden Brook and the Jeannots, by contrast, contend that they fully and fairly compensated Hamilton for his work. Because there is a factual dispute regarding whether Eden Brook and the Jeannots were unjustly enriched at Hamilton's expense, the trial court erred when it dismissed Hamilton's claim for unjust enrichment under MCR 2.116(C)(10).

V. PROMISSORY NOTES

A. STANDARDS OF REVIEW

Hamilton further contends that the trial court erred when it granted summary disposition in favor of Eden Brook on its claims that he breached his agreement to repay the two promissory notes at issue. Specifically, he maintains that there was factual dispute as to whether he received consideration for the notes. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg*, 285 Mich App 369.

B. ANALYSIS

"In a suit on a promissory note, lack or failure of consideration is a good defense against any person not a holder in due course." *Klimmer v Klimmer*, 66 Mich App 310, 312; 238 NW2d 586 (1975). The undisputed evidence showed that Hamilton received the consideration recited for the first note. In that note, which is dated February 2012, Hamilton agreed to repay $4,000 at 10% interest. Eden Brook presented evidence of a canceled check for $4,000 that was written from Eden Brook to Hamilton with the same date and which has the word "loan" written in the memo line. Hamilton did not respond by presenting evidence that he did not receive the $4,000 in consideration for the note. Rather, he stated that he only executed the note because he believed that he would have the wherewithal to repay the note after the inn became successful. Hamilton's belief about his future ability to repay did not establish a question of fact as to whether he received consideration. The trial court did not err when it determined that Eden Brook was entitled to judgment as a matter of law on this note.

The evidence in support of the consideration for the second note—which had a face value of $35,000—is less clear. "Every negotiable instrument is deemed prima facie to have been issued for valuable consideration; and every person whose signature appears thereon to have become a party thereto for value." *In re Booth's Estate*, 326 Mich 337, 343; 40 NW2d 176 (1949) (quotation marks and citation omitted). "To have consideration there must be a bargained-for exchange." *Gen Motors Corp v Dep't of Treasury, Revenue Div*, 466 Mich 231, 238; 644 NW2d 734 (2002). Moreover, courts generally do not "inquire into the sufficiency of consideration." *Id.* at 239.

Here, there was no evidence that Eden Brook (or the Jeannots) transferred $35,000 to Hamilton in exchange for his promise to repay. Instead, it was Eden Brook's position that it, through the Jeannots, transferred thousands of dollars pursuant to the note over a period of time. The note does not, however, on its face provide for a line of credit or the payment of the consideration in installments. In addition, several of the checks proffered as evidence of Hamilton's indebtedness were written directly to him; others were made out to "cash" and indorsed by Hamilton. And still other documents proffered by Eden Brook as proof that the money was tendered are simply receipts and other evidence of goods or services purchased. There is no other evidence or indication that these purchases were made by Hamilton or on his behalf. Eden Brook correctly notes that courts do not inquire into the sufficiency of consideration. However, the issue here is not whether the consideration would be sufficient, but rather whether Eden Brook actually performed its obligation by lending the money to Hamilton under the terms of the note. A reasonable fact-finder examining the evidence might conclude

that the checks and receipts reflect purchases that were made for Eden Brook's benefit and do not reflect the transfer of the funds contemplated under the second note. Because there is a question of fact as to whether Eden Brook ever transferred the funds, the trial court erred when it granted summary disposition on Eden Brook's claim concerning that note.

## VI. SANCTIONS

Hamilton argues that the trial court erred when it determined that his claims were frivolous under MCL 600.2591 and MCR 2.114, and, on that basis, ordered him and his lawyer to pay the attorney fees incurred by Eden Brook and the Jeannots. Because there were questions of fact that must be resolved at trial for all of Hamilton's claims, we conclude that the trial court clearly erred when it found that all of Hamilton's claims were frivolous. See *Kitchen v Kitchen*, 465 Mich 654, 661-662; 641 NW2d 245 (2002). Further, although we have determined that the trial court did not err when it granted Eden Brook's motion for summary disposition on the note for $4,000, we elect to vacate the trial court's order to the extent that it ordered Hamilton and his lawyer to pay any of the attorney fees incurred by the Jeannots and Eden Brook. See MCR 7.216(A)(7). The majority of the fees were plainly unrelated to the collection of the $4,000 note and Hamilton may be entitled to offset any damages for breaching his promise to repay that note.

## VII. JUDICIAL BIAS

Finally, Hamilton argues that the trial judge was biased against him and that we should assign this case to a new judge on remand. Although the record suggests that the trial court was unsympathetic to Hamilton and his lawyer, we do not agree that the evidence established that the court harbored an actual bias or prejudice against him. See *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009). And the mere fact that the judge ruled against Hamilton is not sufficient to require disqualification or reassignment. *Id.*

## VIII. CONCLUSION

We affirm the trial court's order to the extent that it granted summary disposition in Eden Brook's favor on the note for $4,000. However, we reverse the trial court's decision and vacate its order to the extent that it dismissed Hamilton's claims and granted summary disposition in favor of Eden Brook on the $35,000 note. We also vacate the trial court's order to the extent that it ordered Hamilton and his lawyer to pay attorney fees. Finally, we remand this case to the trial court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. We further order that Hamilton is the prevailing party on appeal and may tax his costs. MCR 7.219(A).

/s/ David H. Sawyer
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

-14-